UNITED STATES of America, Plaintiff–Appellee,

v.

Damond SELLERS, David Powell, Edwin Culp a/k/a "Boo," Ronald Hunter Defendants–Appellants.

Nos. 98–1577, 98–1811, 98–1855, 98–2325.

United States Court of Appeals, Sixth Circuit.

May 8, 2001.

Before MERRITT and SILER, Circuit Judges; SARGUS, District Judge.*

SILER, Circuit Judge.

Ronald Hunter and Edwin Culp appeal their convictions for murder in furtherance of a continuing criminal enterprise ("CCE") under 21 U.S.C. § 848(e)(1)(A). Damond Sellers and David Powell appeal their convictions and sentences that followed their Rule 11 Plea Agreements.

## BACKGROUND

These appeals arise from a large drug conspiracy in Detroit in the 1980s and '90s. Timothy Patton was the leader of the conspiracy throughout most of the time it operated. Sellers sold Patton's cocaine on a consignment basis. Many others, including Keith Houston, sold drugs for the operation.

The conspiracy used violence to maintain its power and profitability. Individuals that attempted to extort or steal the proceeds of the operation, steal cocaine or cooperate with the police were murdered. On two occasions, individuals working at Patton's direction mistakenly killed individuals that had nothing to do with the conspiracy. On one occasion, called the Grandville murders, three innocent victims were killed.

The murders for which Culp was convicted occurred in an unsuccessful attempt to kill Monica Johnson who had stolen some of the drug proceeds. Eventually, members of the drug conspiracy killed Johnson as she exited a Detroit night club named the Vault. Allegedly, Hunter shot Johnson on this occasion as Powell and Culp assisted.

These activities led to multi-count, multi-defendant indictments that included the appellants. Hunter was convicted of killing Johnson in furtherance of a CCE under 21 U.S.C. § 848(e)(1)(A), and of a gun count related to the killing. He was acquitted of a drug conspiracy count, three other intentional killing counts and corresponding firearm counts. Culp was convicted under 21 U.S.C. § 848(e)(1)(A) for the Grandville murders. Culp was acquitted of the Johnson murder, one of the three other intentional killing counts, and the corresponding firearm counts. Culp had previously pleaded guilty to the drug conspiracy count as charged in an earlier version of the indictment. Sellers pleaded guilty to a charge of conspiring to distribute cocaine. Powell pleaded guilty to intentional killing in furtherance of a CCE and using and carrying firearms during and in relation to a drug trafficking crime.

## I. DISCUSSION

### A. Evidentiary Ruling

▮ Hunter and Houston were involved in a police chase in August 1996 that eventually led to Hunter's arrest. During the chase of Hunter, the police seized a Glock pistol and found an AK–47 in the van that Hunter and Houston had used to flee from the police.

Just prior to the opening of Hunter's trial, the government sought the introduction of its entire list of exhibits. Hunter's

---

* The Honorable, Edmund A. Sargus, United States District Judge for the Southern District of Ohio, sitting by designation.

counsel objected, arguing that the arrest and seizure should be excluded under FRE 404(b). Hunter's counsel then made a motion *in limine* to prohibit the introduction of the weapons evidence. The district court did not rule on the motion at that time.

Houston testified about this incident at Hunter's trial and indicated that he and Hunter had a Glock pistol and an AK–47 in the van at the time of the arrest. After this testimony, the arresting police officer also testified about the seizure of weapons.

Hunter argues that the district court improperly admitted this evidence because the weapons were seized after completion of the conspiracy. Hunter contends a post-conspiracy criminal act should be inadmissible if offered to show how the affairs of the conspiracy were conducted by analogizing such evidence to post-conspiracy, inadmissible hearsay. He argues that the admission of this evidence was prejudicial because it had no nexus to the charge for which Hunter was convicted and because the police officer who seized the weapons was allowed to "assemble" the AK–47 in front of the jury.[1]

Hunter's counsel failed to object when Houston testified that the weapons were in the van involved in the 1996 police chase. Throughout the trial, testimony was presented that the AK–47 and Glock were the types of weapons used by the conspirators and that it was Hunter's weapon of choice. The evidence established that the use of these weapons was part of the *modus operandi* of the conspirators for committing other crimes. The seized weapons were offered into evidence as circumstantial evidence that identified Hunter as a member of the conspiracy. The testimony of the police officer was relevant to show that the weapon seized was of this type, and also because it was cumulative to and corroborated the testimony of Houston. Even if the admission of the seized weapons was erroneous, it was harmless because there was sufficient evidence to convict Hunter of the Johnson killing. Likewise, Hunter was acquitted of the killings that were linked to the AK–47 and acquitted of the conspiracy charge.

### B. Sufficiency of Evidence

Hunter and Culp argue that there was not sufficient evidence to convict them under 21 U.S.C. § 848(e)(1)(A), because there was no proof that either was a supervisor or a manager of a CCE, as they had no knowledge of the CCE and the killings for which they were convicted lack a "substantial connection" to the CCE.

In reviewing the sufficiency of evidence supporting these convictions this court determines whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Caseslorente*, 220 F.3d 727, 731 (6th Cir.2000) (*citing United States v. Blakeney*, 942 F.2d, 1001, 1010 (6th Cir.1991), in turn *quoting Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original).

■ A defendant does not have to be a supervisor or manager of a CCE to be convicted of an intentional killing in furtherance of the CCE under 21 U.S.C. § 848(e)(1)(A). *See United States v. Turner*, 198 F.3d 425, 432 (4th Cir.1999); *United States v. Jones*, 101 F.3d 1263, 1266 (8th Cir.1996), *cert. denied*, 520 U.S.

---

1. The officer put the magazine into the weapon to show how it appeared when he found it in the van.

1160, 117 S.Ct. 1346, 137 L.Ed.2d 504 (1997); *United States v. McCullah*, 76 F.3d 1087, 1102–03 (10th Cir.1996), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997); *United States v. Cooper*, 19 F.3d 1154, 1165 (7th Cir.1994). Thus, Hunter's and Culp's argument is without merit in this regard.

In order to convict for a CCE murder under 21 U.S.C. § 848(e)(1) the government must prove that: (1) the defendants were engaged in or working in furtherance of the CCE; (2) the defendants intentionally killed or commanded, induced, procured or caused the killing; (3) the killings actually resulted; and (4) there was a substantive connection between the killings and the CCE. *See United States v. Jones*, 101 F.3d 1263, 1266 (8th Cir.1996) (*citing United States v. Tipton*, 90 F.3d 861, 887 (4th Cir.1996)).

Johnson was killed because she stole drug proceeds from Patton. The killings for which Culp was convicted were carried out in an attempt to kill Johnson. Hunter asserts that Johnson was killed in order to keep her from testifying against Patton in a kidnaping case. This is true, but the attempted kidnaping of Johnson occurred because she had stolen drug proceeds from Patton. Patton testified that the purpose of killing Johnson was to allow him the continued ability to sell drugs. A rational jury could determine that the killings were in furtherance of, and had a substantive connection to the CCE based on this evidence.

There is also substantial evidence that both Hunter and Culp knew of the existence of the CCE. Both had contacts with Patton before and on the night of the murder of Johnson. Hunter was paid for the killing with drug proceeds. Prior to the killing, Culp told others that he and Hunter were looking for Johnson because she had stolen Patton's drug money.

Hunter frequently visited the house in which Patton delivered cocaine for the CCE. A rational jury could find that both Culp and Hunter knew about the CCE based on this evidence.

Hunter also argues that his acquittal on the conspiracy charge shows that the government "has not proven one element of the murder charge, that the murder was committed in furtherance of the continuing criminal enterprise," because, according to Hunter, the conspiracy charge is a lesser included offense of CCE charge. This reasoning is flawed. A conspiracy charge is a lesser included offense with respect to the offense of engaging in a CCE, but an acquittal of a defendant on a conspiracy charge does not preclude a guilty verdict on a count of killing in furtherance of the CCE. *See United States v. Walker*, 912 F.Supp. 646, 652 (N.D.N.Y.1996). In *Walker*, the district court held:

> even though Walter Diaz no longer faces a charge of engaging in a CCE under § 848(a) & (c), under a proper showing he may still be liable for intentional killing under § 848(e). The same result attaches should Tyrone Walker or Anthony Walker be acquitted of the § 848(a) & (c) charges: they would still face the possibility of liability under § 848(e) – with the caveat that at least one defendant must be found guilty of engaging in the CCE charged in the indictment, for without a conviction in that regard, it could not be said that any defendant acted in furtherance thereof.

*Id.* at 652. *See also United States v. Brown*, 221 F.3d 1336, 2000 WL 876382, at *5 (6th Cir.2000) (unpublished). The *Brown* court reasoned, "[w]e are satisfied that the government must prove the existence of a CCE as an element of a section 848(e) killing, but the person, other than the defendant, who actually 'engaged in'

the CCE need not be charged or convicted of such conduct." *Id.* The *Brown* case lacks precedential value, but its interpretation of the proof requirements of a § 848(e) charge is correct. Thus, Hunter's argument in this regard is without merit.

## C. Motion for New Trial

■ Hunter argues that the government violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding the statements of two valet parking attendants working at the scene of the killing of Johnson. ° Both attendants stated that they saw a red Cadillac drive by around the time of the killing and one stated that he saw a passenger fire a gun from the car. The district court denied Hunter's motion for a new trial because the statements were available to him throughout the lengthy trial, because the evidence was consistent with that presented at trial, and because of independent proof of Hunter's guilt.

In *Brady* this Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence. Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (citations and internal quotation marks omitted).

Hunter fails to show a reasonable probability that the result of his trial would have differed had this evidence been revealed. The government presented evidence at trial that multiple weapons were fired at the scene of the murder. It did not contend that Hunter had fired all of the weapons. Johnson was shot at close range. The one attendant that witnessed the shots coming from the red Cadillac stated that those shots were fired into the air. There is no evidence that suggests a link between the red Cadillac and the killing. Thus, Hunter's argument is without merit.

## D. Prosecutorial Misconduct

When reviewing claims of prosecutorial misconduct, we determine first whether the statements were improper. If they appear improper, we then look to see if they were flagrant and warrant reversal. To determine flagrancy, the standard set by this Court is: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the improariety by failing to admonish the jury.

*United States v. Francis,* 170 F.3d 546, 549–550 (6th Cir.1999) (citations omitted).

Hunter and Culp also argue that the district court should have granted their motion for a new trial because the government committed prosecutorial misconduct by not fully explaining and misleading the jury about the extent of several witnesses'

plea agreements. The district court concluded that each witness's plea agreement was fully explored and exposed at trial. While some of the witnesses received sentences that were lower than indicated by the plea agreements explored at trial, these reductions resulted from conduct that occurred well after trial. There is no indication that the deals made with these witnesses were more favorable than disclosed at the time of trial, and, thus, these arguments are without merit.[2]

Hunter and Culp also make several allegations of prosecutorial misconduct that they argue deprived them of a fair trial. In sum, these claims are that the government committed prosecutorial misconduct by appealing to the emotion of the jury, asking leading questions, bolstering evidence, vouching for witnesses, by the improper cross-examination of Culp and by violating the district court's rulings on the cross-examination of Marzette Davis.

■ Culp argues that the government improperly appealed to the emotion of the jury by eliciting the fact that one of Culp's Grandville victims was in the military. Whatever the characterization of the government's reference to the victim's military service, improper, flagrant or otherwise, Culp cannot be granted relief on this issue because of the overwhelming strength of the evidence against him. Thus, Culp's argument is without merit.

■ Culp also argues that the government committed prosecutorial misconduct by repeatedly asking leading questions. No prejudicial error occurred with respect to leading questions. The case of *Locken v. United States,* 383 F.2d 340, 341 (9th Cir.1967), cited by Culp, is distinguishable because it involved incredible conduct. In this case, the district court did an excellent job in controlling the form of the government's questioning, sustaining objections and cautioning the prosecutor. The use of leading questions is permitted under Fed. R.Evid. 611(c). The strength of the evidence against Culp also precludes reversal based on this argument.

■ Hunter and Culp further complain that the government improperly bolstered evidence in its closing argument. These arguments are meritless. Specifically, Culp complains that the prosecutor improperly told the jury that he was a liar. The government was referring to evidence which directly undermined Culp's testimony, and Culp's argument is based upon a distortion of the record.

■ Culp also points to six instances in which he alleges the government referred to facts outside of the record in its closing argument. In each instance the government was responding to defense arguments or referring to testimony or other evidence.

Hunter argues that the government improperly vouched for the truthfulness of witnesses who received plea bargains. The record indicates that the government's version of the complained of comments and arguments showing the propriety of the comments is accurate. In one particular instance complained of by Hunter, the government commented on the good-faith tes-

---

2. Hunter also attempts to present the extent of the witnesses' pleas agreements on appeal as an issue under *Brady v. Maryland.* This attempt is without merit. The record shows that some of the witnesses' sentences were reduced after their testimony, which included statements about how much time they were facing. The witnesses' plea agreements were also put in the record. However, as discussed above, the circumstances that led to theses reductions arose after the conclusion of the trial. Thus, Hunter's claim that evidence of the true nature of sentence lengths was known to the government at the time of trial and not disclosed in violation of *Brady* is without merit.

timony that was helpful to the defense. Hunter also complains of a response to a defense counsel's invitation to the government to comment on whether any of the witnesses' plea agreements would be revoked.

■ Next, Culp argues that he was improperly cross-examined. The questions he argues were improper were not objected to, so they are reviewed for plain error. *See United States v. Hayes*, 218 F.3d 615, 619–620 (6th Cir.2000). The information elicited from Culp arose from his testimony that he had taken responsibility for crimes that he had committed. The government's questioning brought out the fact that he had escaped while facing the charges for which he asserted he had taken responsibility. The government also confronted Culp with evidence that conflicted with his testimony and corroborating evidence that had the same effect.

■ Hunter also argues that the government improperly cross-examined Davis. Prior to Davis's taking the stand, the district court had ruled that he should not be questioned on a pending murder charge against him. The defense had previously asked another witness, Houston, several questions about the same murder (of an individual named Harris) for which Davis and Hunter were charged. This line of questioning by the defense attempted to create the impression that Hunter would not have discussed his involvement in the crime. When Davis was called as a witness, Hunter's attorney elicited testimony that Houston had been paid to falsely implicate Hunter in the Harris murder. The government's cross-examination of Davis attempted to show that Houston had already testified at the preliminary hearing and was going to testify at the Harris murder trial. The government argues this testimony showed Davis's bias against Houston.

When the government asked Davis if he had been charged with the Harris murder the defense moved for a mistrial. The district court denied the motion on the basis that Davis's Fifth Amendment right wasn't implicated by the question. The government later asked Davis whether Houston was a key witness in the Harris murder trial.

Hunter argues that the effect of the government's cross examination of Davis was to implicate Hunter as the shooter in the Harris murder and that by ignoring the district court's order not to question Davis concerning the murder, the government committed reversible error. Assuming that the government's questioning was not proper, Hunter cannot show that it was prejudicial because his counsel had elicited more detail about his involvement in the Harris murder than that revealed by the Davis cross-examination.

These allegations of prosecutorial misconduct are strained at best. Even if this court agreed with these defendants' arguments, we could not reverse their convictions because of the strength of the evidence of their guilt.

## E. Jury Instructions

Hunter and Culp argue that their convictions should be reversed because the district court failed to instruct the jury on their connection to, or knowledge of the CCE and failed to give a proper instruction on the existence of the CCE. Neither Hunter nor Culp objected to or proposed additional jury instructions. Therefore, we review for plain error on the instructions. *See United States v. Degan*, 229 F.3d 553, 558 (6th Cir.2000).

Hunter and Culp argue that the district court should have instructed the jury that it could not find them guilty under 21 U.S.C. § 848(e)(1)(A) unless both were

guilty of the charges of engaging in the CCE. This is the same argument discussed previously with regard to the sufficiency of the evidence. As stated, guilt of engaging in the CCE is not a predicate to finding guilt for a killing in furtherance of the CCE.

Hunter also asserts that there was no connection between the killing and the CCE, and that the district court should have instructed the jury on the necessity of finding that Hunter had knowledge of the CCE at the time of the killing of Johnson. The district court did instruct the jury that it had to find that Hunter was working in furtherance of the CCE when he participated in the killing. As discussed, there was abundant evidence that the killing had a substantive connection to the CCE. The instruction required the jury to find just that.

■■■ Finally, Hunter argues that the district court erred by failing "to instruct the jury that they must all agree on which three acts constituted the series of violations and that each act must be proved beyond a reasonable doubt." *See Richardson v. United States*, 526 U.S. 813, 815, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). In *Richardson* the Court held that a conviction for engaging in a CCE must be supported by unanimous agreement by the jury that the defendant "committed each of the individual 'violations' necessary to make up that continuing series." *Id.*

Hunter was convicted of killing in furtherance of a CCE, so the existence of a CCE had to be established. Several defendants in this case pleaded guilty to conspiring to distribute cocaine under 21 U.S.C. § 846. The government contends that the defendants' admission of dozens of drug shipments was sufficient to establish the existence of a CCE, and, thus, the jury instruction was not required or, at least, the failure to so instruct was harmless

error. Counsel for Hunter and Culp repeatedly referred to the existence of the CCE at trial in an attempt to redirect blame for the charges their clients were facing, to show that their clients were not a part of the larger conspiracy, or to show that those responsible for the larger conspiracy were going to avoid the consequences of their actions.

Because the evidence of CCE violations was essentially uncontroverted by Hunter, and admitted and used by Hunter and Culp at trial, the failure to instruct the jury on this matter was not a reversible error under *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). In *Johnson*, the Court analogized the failure to submit materiality to the jury in a perjury case to "improperly instructing the jury on an element of the offense." *Id.* at 469, 117 S.Ct. 1544. The Court held that the failure was plain error, but affirmed the conviction because "even assuming that the failure to submit materiality to the jury affec[ted] substantial rights," the error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings" because the evidence of materiality was "overwhelming ... [and] essentially uncontroverted at trial." *Id.* at 470, 117 S.Ct. 1544.

The holding and analysis of *Johnson* parallels this case and its analogy is on point. Thus, *Johnson* is dispositive of Hunter's allegation of error with the regard to a unanimity instruction. The record supports the government's assertion that evidence of the existence of the CCE was uncontroverted at trial, and thus any error that occurred by not instructing the jury with regard to unanimity on the series of violations did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 470, 117 S.Ct. 1544.

### F. Double Jeopardy / Ineffective Assistance of Counsel

Powell argues that the Double Jeopardy clause precludes his guilty plea and sentence for intentional killings in furtherance of the conspiracy under the fourth superseding indictment because he pleaded guilty to conspiracy on the third superseding indictment. He argues that both indictments included the same conspiracy element and that the charges of the fourth indictment required the relitigation of factual issues resolved by his guilty plea to the third indictment.

He also argues that his plea agreement on the third superseding indictment precluded further prosecution based on information revealed in his debriefing and that the U.S. Attorney assured him of as much. Thus, he argues that his sentence of 117 months under his earlier plea agreement should be specifically enforced, invalidating his later plea and sentencing.

Sellers argues that his counsel rendered ineffective assistance by not objecting to a two-level enhancement on his sentence for gun possession and by making requests for downward departure on bases specifically excluded by the Sentencing Guidelines. He also argues that the lack of a reference to his use of a firearm in any count precludes the district court's firearm enhancement, and that his counsel should have recognized this and objected.

However, these defendants' claims have not been previously raised in the district court and the record has not been sufficiently developed to evaluate them.

This court generally does not review claims of ineffective assistance of counsel for the first time on appeal, instead requiring that a record be developed pursuant to a motion under 28 U .S.C. § 2255. An exception to this principle exists for cases in which the record is adequately developed to allow the court to properly assess the merits of the issue.

*United States v. Fortson,* 194 F.3d 730, 736 (6th Cir.1999) (citations omitted). Powell's double jeopardy issue and the ineffective assistance of counsel arguments of both Powell and Sellers could be examined more thoroughly after further development of the record pursuant to a § 2255 motion. Thus, this court declines to consider these issues.

AFFIRMED.