RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

      *Plaintiff-Appellant*,

    *v.*

RONALD HUNTER,

      *Defendant-Appellee*.

> No. 21-1275

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:92-cr-81058-21—Matthew F. Leitman, District Judge.

Argued: July 28, 2021

Decided and Filed: August 30, 2021

Before: GUY, GIBBONS, and GRIFFIN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Laura Danielle Mazor, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee. **ON BRIEF:** Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Laura Danielle Mazor, Benton Martin, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee. Stephanie Franxman Kessler, PINALES STACHLER YOUNG & BURRELL CO., LPA, Cincinnati, Ohio, Michael L. Waldman, Courtney L. Millian, ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER, LLP, Washington, D.C., for Amicus Curiae.

---

**OPINION**

---

RALPH B. GUY, JR., Circuit Judge.  Drug enterprise hitman Ronald Hunter was convicted by a federal jury of murdering a 23-year-old woman outside a nightclub.  He was sentenced to life in prison.  Twenty-one years later, a different judge granted Hunter's motion for compassionate release.  Based upon the fact that Hunter did not get the benefit of the non-retroactive decision in *United States v. Booker*, 543 U.S. 220 (2005), certain facts that existed at sentencing, and Hunter's less-than-spotless rehabilitation efforts, the district court found that together these factors amounted to the "extraordinary and compelling reasons" required for a sentence reduction.  18 U.S.C. § 3582(c)(1)(A)(i).  The question is whether this was an abuse of discretion.  We conclude that it was and reverse.

## I.

### A.

Ronald Hunter was a hitman for a large drug enterprise in Detroit, Michigan in the 1990s.  In 1992, Hunter escaped from a parole camp and agreed to kill 23-year-old Monica Johnson.  Johnson was targeted to prevent her from testifying in a kidnapping case and because she had reportedly stolen money from one of the enterprise leaders.  Hunter and three accomplices tracked down Johnson at a Detroit nightclub.  When Johnson exited the club, Hunter shot her in the head.  As Johnson lay on the ground, Hunter shot her three or four more times.  Hunter was paid one-eighth kilogram of cocaine for the murder.  At the time, Hunter was about one month shy of twenty-four years of age.

Roughly five years later, a federal jury convicted Hunter of intentionally killing Johnson in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A), and using or carrying a firearm in relation to that killing, in violation of 18 U.S.C. § 924(c).[1]

---

[1]The jury acquitted Hunter of conspiracy to distribute cocaine (Count 1), four other intentional killings (Counts 6, 8, and 10), and three related firearm counts (Counts 7, 9, and 11).  Hunter's presentence report (PSR) describes those four murders, as well as a fifth murder for which charges were pending, and notes that Hunter was

Hunter's conviction was part of the prosecution of various offenses against twenty-one other co-defendants. In 1998, Judge Anna Diggs Taylor sentenced Hunter to life in prison plus a consecutive prison term of five years, to be followed by five years of supervised release. Based upon Hunter's Criminal History Category of VI and his offense level, the prison sentences imposed were the minimum under the version of the Sentencing Guidelines then in existence. This court affirmed Hunter's convictions on direct appeal. *United States v. Sellers*, 9 F. App'x 335, 337, 344 (6th Cir. 2001), *cert. denied sub nom.*, 535 U.S. 909 (2002).

Hunter spent the next two decades unsuccessfully seeking to vacate his conviction in federal habeas proceedings, including numerous appeals to this court. *See* 28 U.S.C. § 2255. He also unsuccessfully sought to reduce his sentence under 18 U.S.C. § 3582(c)(2), based upon retroactive changes to the Guidelines for certain drug offenses. Judge Taylor, and then later Judge Marianne O. Battani, handled Hunter's collateral attacks on his conviction and sentence.

**B.**

At about fifty-two years of age, having served twenty-one years in prison, Hunter filed a pro se motion for "compassionate release" on the basis of "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). A couple of weeks later, in December 2020, Hunter's case was transferred from Judge Battani to Judge Matthew F. Leitman. The district court then appointed counsel to represent Hunter on his motion. On March 3, 2021, the district court held a video hearing with counsel, and Hunter participated by phone. After the hearing, the district court decided to take the "night to think [it] through" and scheduled a video conference for the following day to issue an oral ruling.

At the video conference the next day, the district court granted Hunter's motion for compassionate release. First, the court turned to the issue of whether Hunter had demonstrated "extraordinary and compelling reasons" for his release. *See* § 3582(c)(1)(A)(i). The court found that the risk from the COVID-19 virus and Hunter's asserted health conditions did not rise to the level of "extraordinary and compelling" because Hunter had refused the vaccine. Nonetheless,

---

the triggerman in all five murders. At sentencing, the judge overruled Hunter's objection that it was prejudicial to include the murders in the PSR.

the court concluded that four other factors "taken together" amounted to "extraordinary and compelling circumstances": (1) Hunter was sentenced before the change in sentencing law announced in *Booker*, 543 U.S. at 245-46, which changed the nature of the Guidelines from mandatory to advisory by invalidating two statutory provisions; (2) Hunter's "relative youth" of almost twenty-four years of age when he murdered Johnson; (3) the "sentencing disparities" between Hunter and three particular co-defendants who pleaded guilty and testified for the government at trial;**[2]** and (4) Hunter's rehabilitation because, after discounting Hunter's prison discipline record, Hunter had "taught himself to read, earned a GED, completed the intensive Challenge course, completed drug treatment, [and] completed many other courses" while in prison.

Next, the district court weighed the factors under 18 U.S.C. § 3553(a). The court concluded that, on balance, the factors weighed in favor of a sentence reduction. Among other things, the court considered Hunter's "relatively youthful" age at the time of the offense as a "mitigating factor"; placed weight on Hunter's "very difficult childhood," his "substantial post-offense rehabilitation," and the six letters submitted by Hunter's family and friends, including his youth football coach; and discounted Hunter's prison discipline record. *See* 18 U.S.C. § 3553(a)(1) (listing as a sentencing factor "the nature and circumstances of the offense and the history and characteristics of the defendant"). Moreover, in the court's view, granting the motion would mitigate an "unjustified disparity between the life sentence imposed on [Hunter] and the sentences imposed on [the] three co-defendants" who pleaded guilty and testified for the government, and also bring Hunter's sentence "more in line with national sentences for murder" in 2019. *See* § 3553(a)(6) (establishing as a sentencing factor "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

In granting Hunter's motion, the district court reduced Hunter's sentence to time served and placed him under home confinement for the first year of his supervised release. The district

---

**[2]***See Sellers*, 9 F. App'x at 339; *Powell v. United States*, No. 02-71808, 2002 WL 31236182, at *3-4 (E.D. Mich. Sept. 10, 2002).

court denied the government's request to stay the ruling pending appeal but agreed to stay Hunter's release for twenty-one days.

The government appealed, and this court granted the government's motion for a stay pending appeal.

## II.

### A.

Sentence modifications are the exception, not the rule.  This is because "'a judgment of conviction that includes a sentence [of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."  *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alteration in original) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c)(1)(B) (authorizing sentence modifications only where "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure").  One exception to the rule of finality is set forth in what is colloquially known as the "compassionate release" statute.  *See* § 3582(c)(1)(A).

As relevant here, § 3582(c)(1)(A) authorizes a district court to reduce a defendant's sentence only if it finds that the defendant satisfies three requirements: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the relevant § 3553(a) factors support the reduction.  § 3582(c)(1)(A)(i); *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021).  A district court's conclusions on those issues are reviewed for an abuse of discretion.  *See United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020).  "An abuse of discretion occurs when the district court 'relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law.'"  *Elias*, 984 F.3d at 520 (quoting *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020)).

The government only challenges the first requirement, arguing that the district court erred in finding that there are "extraordinary and compelling reasons" for Hunter's release.  Congress did not define what constitutes an "extraordinary and compelling reason," except to state that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling

reason." 28 U.S.C. § 994(t). Instead, Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.* The Commission did just that. *See* USSG § 1B1.13, comment., n.1. This court has held, however, that "§ 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates" and thus "district courts are not bound by § 1B1.13 in defining extraordinary and compelling reasons for release." *Elias*, 984 F.3d at 519, 521; *see also United States v. Tomes*, 990 F.3d 500, 503 & n.1 (6th Cir. 2021) (explaining that a court "may look to § 1B1.13," if it so chooses, but a court "may not proceed as though § 1B1.13 *constrains* its analysis of what constitutes extraordinary and compelling reasons for release"). Therefore, we said that until Congress or the Commission acts, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519-20; *see United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020).

But the mere fact that defining *extraordinary and compelling* "is left to the district court's discretion, with no heavy congressional thumb on either side of the scales, does not mean that no legal standard governs that discretion. . . . '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (quoting *United States v. Burr*, 25 F. Cas. 30, 35, F. Cas. No. 14692d (CC Va. 1807) (Marshall, C.J.)); *accord Nken v. Holder*, 556 U.S. 418, 434 (2009). For that reason, "limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin*, 546 U.S. at 139. After all, "'discretion' does not mean 'whim.'" *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020) (quoting *Martin*, 546 U.S. at 139); *accord Jones*, 980 F.3d at 1112. And in our system of laws, "discretion is rarely without limits." *Martin*, 546 U.S. at 139 (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989)). Here, the text of § 3582 limits a court's discretion.

The statute sets a legal standard: It requires "extraordinary *and* compelling reasons" to modify a prisoner's already-final sentence. § 3582(c)(1)(A)(i) (emphasis added). So it is not as if Congress left sentence modifications entirely to the district courts' "discretion." Although the

statute does not define "extraordinary and compelling," those words still have their "ordinary meaning at the time Congress enacted the statute." *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (alterations omitted) (quoting *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)); *see also Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). And when Congress enacted the statute in 1984, "extraordinary" was understood to mean "most unusual," "far from common," and "having little or no precedent." Webster's Third New International Dictionary: Unabridged 807 (1971). "Compelling" meant "forcing, impelling, driving." *Id.* at 463. Although the district court recited similar definitions, it veered off course in their application.

As explained further below, the text and structure of § 3582(c)(1)(A) limit a district court's discretion to define "extraordinary and compelling" in two ways relevant to this case. First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

**B.**

The four "factors" the district court identified do not constitute the "extraordinary and compelling reasons" required to reduce Hunter's sentence. The court impermissibly factored in a non-retroactive change in sentencing law (*Booker*) and facts that existed at sentencing (Hunter's age when he committed the murder and the sentences of his co-defendants). Although Hunter's rehabilitation is a post-sentencing change that the district court could consider, it cannot serve as a stand-alone reason. We address each error in turn.[3]

---

[3]Hunter faults the government for "examining each factor in isolation" and "fail[ing] to appreciate how the factors the court identified interact to create a unique set of circumstances." But the district court analyzed the four factors in isolation and summarily concluded that the factors "taken together" constituted "extraordinary and compelling circumstances" for Hunter's release. The district court did not explain how the factors interacted, or how the combination of the factors compounded the reasons for Hunter's release. Nor does Hunter offer any such explanation. We will not perform that exercise because the district court was not permitted to rely on three of the factors and the fourth is insufficient to sustain the sentence reduction.

**1.**

The district court erred when it considered *Booker*'s non-retroactive change in sentencing law as a factor to support an "extraordinary and compelling" reason for Hunter's release. The non-retroactivity doctrine is an ordinary rule applied to all criminal defendants. Because of that rule, *Booker* is not retroactive, and nothing in § 3582(c)(1) suggests that Congress intended to displace that rule in the context of sentence reductions.

Although *Booker* was decided after Hunter's sentence was already final, the district court did not address, much less acknowledge, the problem with applying *Booker* retroactively. Instead, the court concluded that the change in the law announced in *Booker* was an appropriate factor to consider because, in the court's view, if Hunter had been sentenced post-*Booker*, "he would have had a fighting and meaningful shot at a below guideline sentence." Thus, according to the court, Hunter was "deprived of a number of very significant arguments" at sentencing by virtue of being sentenced pre-*Booker*. In particular, the court reasoned that Hunter "could have pointed to, among other things, his difficult childhood, his relative youth and . . . the sentencing disparities between [Hunter and] his co-defendants," and then Judge Taylor could have taken those facts into consideration under 18 U.S.C. § 3553(a).

After the district court issued its ruling, this court held that the non-retroactive statutory reforms in the First Step Act of 2018—as a matter of law—cannot be used to find "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Jarvis*, 999 F.3d 442, 445-46 (6th Cir. 2021); *United States v. Wills*, 991 F.3d 720, 723-24 (6th Cir. 2021); *Tomes*, 990 F.3d at 505. As such, in *Jarvis*, *Wills*, and *Tomes*, we affirmed the denial of compassionate release, despite the reduced penalties resulting from the non-retroactive amendments that the defendants presented as "extraordinary and compelling reasons." *Jarvis*, 999 F.3d at 443; *Wills*, 991 F.3d at 723-24; *Tomes*, 990 F.3d at 505.

*Tomes* declared that courts cannot "us[e] § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Tomes*, 990 F.3d at 505. And in *Wills*, we explained that "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from

defendants already sentenced." *Wills*, 991 F.3d at 723-24 (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). Thus, we held that "[w]hat the Supreme Court views as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *Id.* at 724.**[4]**

*Jarvis* then made it clear that courts cannot "treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as 'extraordinary and compelling' explanations for a sentencing reduction." *Jarvis*, 999 F.3d at 445. The reason for this is simple: "[A]dding a legally impermissible ground to three insufficient factual considerations does not entitle a defendant to a sentence reduction." *Id.* at 444. *Jarvis* also concluded, however, that "for those defendants who can show some other 'extraordinary and compelling' reason for a sentencing reduction . . ., they *may* ask the district court to consider sentencing law changes . . . in balancing the § 3553(a) factors." *Id.* at 445 (emphasis added). This second point was premised on the rationale in *United States v. Maxwell*, 991 F.3d 685, 689-93 (6th Cir. 2021). As *Jarvis* explained, it is the text of § 3553(a) that contemplates consideration of "'up-to-date notions' . . . reflected by current sentencing law." *Id.* (quoting *Maxwell*, 991 F.3d at 691).

The holding and reasoning in *Jarvis* apply with equal force here. The fact that this case involves non-retroactive precedent, as opposed to statutes, is no reason to take a different approach. We are required to follow statutes *and* binding precedent. *See, e.g.*, *Rodriguez de*

---

**[4]**We recognize that after *Wills* and *Tomes*, a divided panel of this court reversed and remanded an order denying compassionate release in *United States v. Owens*, holding that in determining "whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." 996 F.3d 755, 760, 763 (6th Cir. 2021). *Owens* based its holding on the Tenth Circuit's decisions in *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021), and *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021), after reasoning that *Wills* and *Tomes* do not specifically "foreclose" a defendant from relying on a non-retroactive amendment in combination with other factors. 996 F.3d at 755, 760-63. But as this court later explained in *Jarvis*, the defendant in *Tomes* had, in fact, combined his First Step Act arguments with four other factors that he contended "were extraordinary and compelling reasons for release." *Jarvis*, 999 F.3d at 446 (quoting *Tomes*, 990 F.3d at 502). Thus, as in *Jarvis*, we must follow *Tomes* as controlling authority because "*Owens* does not follow *Tomes*'s reasoning or holding that a non-retroactive First Step Act amendment fails to amount to an 'extraordinary and compelling' explanation for a sentencing reduction." *Id.* at 445-46; *see also Darrah v. City of Oak Park*, 255 F.3d 301, 309-10 (6th Cir. 2001) (holding that a prior published decision of this court is binding unless it is inconsistent with a decision of the United States Supreme Court or the prior decision is overruled by an en banc panel of this court).

*Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989); *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989) ("[I]t is indisputable that *stare decisis* is a basic self-governing principle within the Judicial Branch, which is entrusted with . . . preserving a jurisprudential system that is not based upon 'an arbitrary discretion'" (citation omitted)). Of course, "Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution." *Dickerson v. United States*, 530 U.S. 428, 437 (2000). But in the absence of a statute on point, as in this case, the rules of evidence and procedure that the Supreme Court announces "are binding" on federal courts. *Id.*

The district court here misapplied the law by giving retroactive effect to *Booker*. The Supreme Court in *Booker* held that the rules announced applied "to all cases on direct review" and told courts to apply "ordinary prudential doctrines" to determine whether a particular defendant is entitled to a "new sentencing." *Booker*, 543 U.S. at 268. And this court has explicitly held that *Booker* "does not apply retroactively in collateral proceedings." *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005); *Duncan v. United States*, 552 F.3d 442, 447 (6th Cir. 2009). Section 3582(c) proceedings fall in that category. *See, e.g.*, *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021); *see also Dillon*, 560 U.S. at 828-30. This court, in fact, specifically declined to apply *Booker* retroactively in the context of a § 3582(c)(2) motion. *United States v. Carter*, 500 F.3d 486, 491 (6th Cir. 2007). Just as courts cannot use § 3582(c)(1)(A) as an "end run around" Congress' retroactivity choices, *Jarvis*, 999 F.3d at 444, courts cannot use that statute to circumvent binding precedent declaring the non-retroactive effect of new rules of criminal procedure.

Nothing in § 3582(c) purports to change the judicial doctrine that "a decision announcing a new rule of criminal procedure ordinarily does not apply retroactively" to final judgments. *See Edwards v. Vannoy*, 141 S. Ct. 1547, 1551-52 (2021). "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *United States v. Noland*, 517 U.S. 535, 539 (1996) (quoting *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986)); *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 422 (2009) ("We assume that Congress is aware of

existing law when it passes legislation" (citation omitted)). The Supreme Court's "regular practice" of not applying new procedural rules retroactively existed long before § 3582(c) was enacted in 1984. *Edwards*, 141 S. Ct. at 1554, 1557-58.**5** And yet in 1984, Congress did not mention non-retroactive precedent when it enacted § 3582(c); instead, Congress chose the phrase "extraordinary and compelling reasons." *See* Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 1998-99. After 1984, the list of non-retroactive precedents continued to grow. *See, e.g.*, *Allen v. Hardy*, 478 U.S. 255, 261 (1986) (per curiam) (rejecting retroactivity for *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), which prohibits exercising peremptory challenges to remove jurors because of their race); *Whorton v. Bockting*, 549 U.S. 406, 421 (2007) (rejecting retroactivity for Confrontation Clause rule recognized in *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004)). But when § 3582 was amended in 2018, again Congress made no reference to non-retroactive precedent. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239. Congress' silence in § 3582(c) means it did not grant district courts the discretion to unilaterally alter the non-retroactivity of criminal procedure precedent. *Noland*, 517 U.S. at 539.

The vague and amorphous phrase "extraordinary and compelling reasons" in a narrow sentence reduction statute does not remotely suggest that Congress intended to effect the monumental change of giving district courts the discretion to treat non-retroactive precedent as a basis to alter a final judgment (and release a prisoner). And we have it on good authority that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626-27 (2018). The finality of criminal judgments and the non-retroactivity doctrine are proverbial elephants in the criminal justice system. "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the

---

**5***See, e.g.*, *Linkletter v. Walker*, 381 U.S. 618, 639-40 (1965) (refusing to give retroactive effect to *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), which incorporated the Fourth Amendment exclusionary rule against the States); *Johnson v. New Jersey*, 384 U.S. 719, 721 (1966) (rejecting retroactivity for *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), which required police to inform individuals in custody of certain rights before questioning them); *DeStefano v. Woods*, 392 U.S. 631, 633-35 (1968) (per curiam) (declining to retroactively apply jury-trial rule recognized in *Duncan v. Louisiana*, 391 U.S. 145, 160-62 (1968)).

operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality). "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation." *Id.* at 309 (quoting *Mackey v. United States*, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in part and dissenting in part)). Moreover, the United States has an interest against retroactive application of new rules because it "*continually* forces" the government to "marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards." *See id.* at 310; *see also Johnson v. United States*, 544 U.S. 295, 309 (2005). Given the significance of the issue, it follows that Congress did not hide the authority to nullify the non-retroactivity doctrine in the words "extraordinary and compelling reasons."

All of this underscores the fact that the "the ordinary practice is to apply new [rules of criminal procedure] to defendants not yet sentenced, while withholding that change from defendants already sentenced." *See Wills*, 991 F.3d at 723-24 (quoting *Dorsey*, 567 U.S. at 280); *Edwards*, 141 S. Ct. at 1551-52. And the application of that "'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *Wills*, 991 F.3d at 724.

Hunter resists that conclusion. His position is that compassionate release is available whenever "there is not a specific statute that already affords relief," so long as the judge uses the magic words "extraordinary and compelling." Appellee Br. 32 (quoting *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020)). But that is not stated in § 3582(c)(1)(A). Moreover, Hunter misapplies the well-established canon of statutory interpretation that "the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, *regardless of the priority of enactment*." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (emphasis added). As a result, "the specific provision is construed as an exception to the general one." *RadLAX*, 566 U.S. at 645 (citing *Morton*, 417 U.S. at 550-51); *see also EC Term of Years Trust v. United States*, 550 U.S. 429, 433-34 (2007) ("[A] precisely drawn, detailed statute pre-

empts more general remedies" when, for example, "resort to a general remedy would effectively extend the limitations period for the specific one." (citation omitted)). The rule is applied to reconcile two provisions in the same statute. *RadLAX*, 566 U.S. at 645. And the same rule is used to resolve a potential overlap between two separate statutes where "a general permission or prohibition is contradicted by a specific prohibition or permission." *See id.*; *see, e.g.*, *EC Term of Years Trust*, 550 U.S. at 433-35; *United States v. Estate of Romani*, 523 U.S. 517, 531-32 (1998); *Morton*, 417 U.S. at 550-51. "What counts for application of the general/specific canon is not the *nature* of the provisions' prescriptions but their *scope*." *RadLAX*, 566 U.S. at 648.

Here, there is a more specific statute that takes priority. The federal habeas statute grants "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a claim "demands *immediate release or a shorter period of detention*, it attacks 'the very duration of . . . physical confinement,' and thus lies at 'the core of habeas corpus.'" *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (cleaned up; emphasis added) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973)). Thus, the habeas and compassionate release statutes overlap, but the habeas statute is the more specific. The habeas statute specifically states that any such claim must be brought within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly *recognized by the Supreme Court and made retroactively applicable* to cases on collateral review." § 2255(f)(3) (emphasis added). Similarly, if the claim is asserted in the inmate's "second or successive" habeas petition, the inmate must show that the claim is based upon either: (1) "newly discovered evidence"; or (2) "a new rule of constitutional law*, made retroactive to cases on collateral review by the Supreme Court*, that was previously unavailable." § 2255(h) (emphasis added); *see* 28 U.S.C. § 2244(b)(3)(C).

There is no "clear intention" that Congress intended to allow prisoners to avoid the specific habeas restrictions by resorting to compassionate release. *See Morton*, 417 U.S. at 550-51. "Any argument that a federal court is empowered to exceed the limitations explicitly set out in §§ [2255 and 2244] without plain evidence of congressional intent to supersede those sections ignores [the] longstanding practice of construing statutes *in pari materia*." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *accord Guidry v. Sheet Metal*

*Workers Nat'l Pension Fund*, 493 U.S. 365, 375-76 (1990) ("We do not believe that congressional intent would be effectuated by reading the LMRDA's general reference to 'other appropriate relief' as overriding an express, specific congressional directive [in ERISA] that pension benefits not be subject to assignment or alienation."). Therefore, we will not read § 3582(c)(1)(A)'s "general permission" in a way that would "swallow" the more "specific prohibition or permission" for habeas relief. *See RadLAX*, 566 U.S. at 645; *accord United States v. Thacker*, 4 F.4th 569, 574-75 (7th Cir. 2021)*.*

Finding no footing in the statutory text, Hunter and amicus rest their interpretation on legislative history. "But legislative history is not the law." *Epic Sys. Corp.*, 138 S. Ct. at 1631. "Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011). And here, the statutory text does not support Hunter's position and legislative history is equally unavailing.

Hunter and amicus repeatedly point to statements in the Senate Judiciary Committee's 1983 report that "[t]he value of the forms of 'safety valves' contained in [§ 3582(c)] lies in the fact that they assure the availability of specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons' and *to respond to changes in the Guidelines*." *See* S. Rep. No. 98-225, at 121 (1983) (emphasis added); *see id.* at 55-56. But in quoting from the report, they conveniently leave out the part about "extraordinary and compelling reasons" and latch onto the words "changes in the Guidelines." This is significant because in the same place in the report, it explains the application of two "safety valves"—one under § 3582(c)(1) and the other under § 3582(c)(2). *See id.* at 121. "The first 'safety valve' applies . . . to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness," that a court may find "under subsection (c)(1)(A)" that a reduction is "justified by 'extraordinary and compelling reasons'"; and "*[a]nother 'safety valve,' set forth in subsection (c)(2)*, permits the court to reduce a term of imprisonment . . . if the term was based on a sentencing range in the applicable Guideline that was lowered by the Sentencing Commission after the defendant's sentence was imposed[.]" *Id.* Thus, when the Senate Judiciary Committee referred to sentence reductions based upon "changes in the Guidelines," it was referring solely to sentence reductions

under § 3582(c)(2), not (c)(1). We will not "divine messages from congressional commentary directed to different questions altogether." *Epic Sys. Corp.*, 138 S. Ct. at 1631.

That leaves the policy arguments offered by Hunter and the district court based on subjective notions of fairness in light of today's sentencing laws. But "courts aren't free to rewrite clear statutes under the banner of [their] own policy concerns." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019). As such, the phrase "extraordinary and compelling reasons" in § 3582(c)(1)(A)(i) is not a license to override the non-retroactivity of any statute, Guideline, or Supreme Court decision whenever a district court believes that the non-retroactive nature of the law is unfair or inequitable.

In sum, non-retroactive changes in the law cannot be relied upon as "extraordinary and compelling" explanations for a sentence reduction, regardless of whether the legal changes are offered alone or combined with other personal factors. If a defendant can show that some other reason is "extraordinary and compelling," then the district court is permitted (but is not required) to consider those legal developments in balancing the § 3553(a) factors. *Jarvis*, 999 F.3d at 445. The district court therefore abused its discretion when it relied on the non-retroactive decision in *Booker* as part of its extraordinary-and-compelling-reasons analysis.[6]

**2.**

With *Booker* out of the equation, the district court's decision rests on three factors. But two of those factors—Hunter's age when he committed the murder and his co-defendants' sentences—were impermissible factual considerations because those facts existed at sentencing.

Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as "extraordinary and compelling." The problem with such an approach is that it renders the general rule of finality and the extraordinary-and-compelling-reasons requirement "superfluous, void or insignificant." *See Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). "No such design can be

---

[6]To the extent the district court considered the Sentencing Commission's statistics for 2019, that is simply a disguise for various non-retroactive changes in sentencing law that do not—alone or with other factors—qualify as "extraordinary and compelling."

attributed to a rational Congress." *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 265 (2013).

Recall that Congress established a general rule of finality and then carved out a few limited exceptions. *See* 18 U.S.C. § 3582(c); *Dillon*, 560 U.S. at 824. The exception in § 3582(c)(1)(A)(i) is not an open-ended invitation to simply relitigate and reweigh the § 3553(a) factors based on facts that existed at sentencing. "Congress did not write the statute that way." *See Corley*, 556 U.S. at 315 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Rather, the statute contains three distinct requirements. *Ruffin*, 978 F.3d at 1004-05. As relevant here, a court must: (1) find "extraordinary and compelling reasons" for a sentence reduction; and then (2) find that the § 3553(a) factors support that reduction. *Elias*, 984 F.3d at 518-19. Under the second requirement, § 3553(a) allows a court to go back in time and weigh the facts that existed at sentencing—such as the "nature and circumstances of the offense," the defendant's background, and "sentence disparities" between defendants (nationally and also among co-defendants) with similar records who are convicted of similar conduct. 18 U.S.C. § 3553(a)(1), (6); *see United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007). Finding an "extraordinary and compelling" reason for a sentence reduction is a separate requirement, so it cannot be synonymous with a § 3553(a) analysis.

With that understanding, § 3582(c)(1)(A)'s text and structure, together with its narrow scope, show that identifying "extraordinary and compelling reasons" is a task that focuses on post-sentencing factual developments. A court must first find that the facts of *the defendant's* personal circumstances changed after sentencing in a way that is "extraordinary and compelling," before a court is permitted to weigh (or revisit) the § 3553(a) factors. *See Setser v. United States*, 566 U.S. 231, 243 (2012) (explaining that § 3582(c)(1)(A) is triggered by "developments that take place after the [original] sentencing"). Indeed, we have said that defendants seeking compassionate release must show that their "personal circumstances" have "changed so that the district court should weigh the § 3553(a) factors differently than it had at the original sentencing." *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021); *accord United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). Therefore, facts that existed at

sentencing cannot later be construed as "extraordinary and compelling reasons" to reduce a final sentence.

Legislative history confirms this conclusion. The Senate Judiciary Committee explained that § 3582(c)(1)(A)(i) "applies, regardless of the length of sentence, to *the unusual case* in which the *defendant's circumstances are so changed*, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." *See* S. Rep. No. 98-225, at 121 (emphasis added); *see id.* at 55-56 ("The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, [and] cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence.").

The district court erred in its approach by labeling the facts that existed at sentencing "extraordinary and compelling." As noted, in applying *Booker* retroactively, the district court reasoned that Hunter was "deprived of a number of very significant arguments" at sentencing by virtue of being sentenced pre-*Booker*; namely, that Hunter "could have pointed to, among other things, his difficult childhood, his relative youth and . . . the sentencing disparities between [Hunter and] his co-defendants," as factors for Judge Taylor to take into consideration under 18 U.S.C. § 3553(a). The court then took Hunter's age at the time of the murder and "the sentencing disparities between [Hunter and] his co-defendants"—facts that existed at sentencing—and used those as factors to find "extraordinary and compelling reasons" for a sentence reduction. And then the court considered those same factors to conduct the § 3553(a) analysis that Judge Taylor could not in a pre-*Booker* sentencing. *See* § 3553(a)(1), (6); *cf. Booker*, 543 U.S. at 259-60; *Peugh v. United States*, 569 U.S. 530, 536 (2013). This approach nullifies the extraordinary-and-compelling-reasons requirement and transforms § 3582(c)(1)(A) into an unbounded resentencing statute.

The district court's reliance on scientific articles does not change the result. In concluding that Hunter was in his "relative youth" (at almost twenty-four years of age) when he murdered Johnson and that this factor supported a finding of "extraordinary and compelling reasons," the court reasoned that the professional and academic articles cited by defense counsel suggested that "brain development is not complete up until the mid-20s which can be up to age

25" and that "brain development can be inhibited and slowed by extensive alcohol and drug use."[7]  While the court acknowledged that Hunter's age was "toward the higher end of relative youth," after noting Hunter's use of marijuana since age 13 and alcohol since age 16, the court surmised that "it is reasonable to regard his brain as still in [the] relative youthful stage" at the time he committed the murder.  But that reasoning makes § 3582(c)'s general rule of finality illusory.

The facts at sentencing are taken as given because "the notion of legality must at some point include the assignment of final competence to determine legality."  *Teague*, 489 U.S. at 309; *see also McCleskey v. Zant*, 499 U.S. 467, 492 (1991) ("A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude" is a system that "no longer reflects humane concern but merely anxiety and a desire for immobility." (citation omitted)).  Hunter was not a minor at the time of his offense, so his life sentence was legally valid.  *See Jones v. Mississippi*, 141 S. Ct. 1307, 1317 (2021).  But there will always be a new academic article a defendant can marshal to recharacterize their background and the facts of the offense, and there is no limit on the number of successive motions a defendant can file under § 3582(c)(1)(A).  That novel approach offers no principled limit on when a court may find an extraordinary and compelling reason to reduce an already-final sentence.

This case further illustrates the problem with relabeling the sentencing facts as "extraordinary and compelling."  The other factor the district court included in finding "extraordinary and compelling reasons" was "the sentencing disparities" between Hunter and three co-defendants who pleaded guilty and testified against Hunter and other defendants.  *Cf. Sellers*, 9 F. App'x at 339; *Powell*, 2002 WL 31236182, at \*4.  From the district court's perspective, those defendants have "the most culpability for the most harm inflicted on the community."  On this point, the court noted that two of the co-defendants—"who were involved in a lot of mayhem and substantial drug dealing *but not murder*"—were released in "2004 and 2005 respectively."  (Emphasis added).  Although the third co-defendant pleaded guilty to

---

[7]The relevant article Hunter cited states that the portion of the brain responsible for "judgment" and "decision making" reaches "full adult maturity *in the early to* mid-20s" and that the "change is gradual throughout the period from 12-13 through 23-25 *on average*."  (Emphasis added).  The article speaks in terms of averages and says nothing about the exact status of Hunter's brain when he killed Johnson.

murder and assisted the government, he was not released until 2013.[8]   The district court nevertheless concluded that:

> Of course, [these three co-defendants] cooperated and pleaded guilty and that's important and that certainly justifies some disparity, perhaps a meaningful disparity in the sentences, but . . . cooperation and pleading guilty only justifies so much of a disparity and I am persuaded here that that cooperation and plea by [the three co-defendants] . . . doesn't justify the very substantial disparity between their sentences and the life sentence imposed on [Hunter].

This was a transparent disagreement with the sentence imposed.

The extraordinary-and-compelling-reasons requirement in § 3582(c)(1)(A) cannot be met based on a mere difference of opinion regarding the significance of the facts that existed at sentencing.  That is true regardless of what the sentencing judge did or did not say at sentencing.[9]

Lastly, even if the sentence disparity did not exist at the time Hunter was sentenced, subsequent leniency in another defendant's case says nothing about how *Hunter's* personal circumstances have changed since he was sentenced.  Moreover, our criminal justice system "is for the most part a system of pleas, not a system of trials," and this "often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial."  *See Missouri v. Frye*, 566 U.S. 134, 143-44 (2012) (citations omitted).  And that tradeoff is permissible.  *See, e.g.*, 18 U.S.C. § 3553(e); USSG §§ 3E1.1, 5K1.1; Fed. R. Crim. P. 35(b); *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008) ("Disparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government.").  There is nothing "extraordinary" or "compelling" about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government.

---

[8]*See* ECF No. 556, *United States v. Powell*, No. 92-CR-81058-DT-04 (E.D. Mich. July 9, 1998); *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (search "David T. Powell").

[9]The district court also failed to acknowledge the fact that at least one other co-defendant, Culp, was found guilty of murder and sentenced to life in prison.  *Sellers*, 9 F. App'x at 337; *Culp v. United States*, 266 F. Supp. 2d 606, 607 (E.D. Mich. 2003).

**3.**

The only reason left standing is Hunter's rehabilitation in prison. The government takes issue with how the district court evaluated Hunter's rehabilitation. We tend to agree,[10] but it is unnecessary for us to decide this question because Congress was emphatically clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Thus, there is no "extraordinary and compelling" reason to reduce Hunter's sentence.

\*          \*          \*

For the reasons stated, we REVERSE.

---

[10]In finding that Hunter had demonstrated "substantial rehabilitation," the district court reasoned that Hunter had "taught himself to read, earned a GED, completed the intensive Challenge course, completed drug treatment, [and] completed many other courses" while in prison. While it is commendable that Hunter completed those programs, completion of those programs is common. In 2019 alone, at least 3,155 federal inmates completed their GED (only 30% of federal inmates do not have a GED), and over 37,000 inmates participated in either drug treatment or drug education. *See Federal Bureau of Prisons Program Fact Sheet*, Federal Bureau of Prisons (March 31, 2021), https://www.bop.gov/about/statistics/docs/program_fact_sheet_202105.pdf. As for Hunter's Bureau of Prisons disciplinary record, it contains eleven separate sanctioned violations for: (2002 to 2003) fighting, possessing a dangerous weapon, possessing intoxicants in his cell, and being insolent to a staff member; (2006 to 2007) possessing a dangerous weapon, fighting, being insolent to a staff member, and refusing to obey an order; and most recently (2018 to 2019), assault without serious injury for touching a staff member's hand, refusing to obey orders to leave a staff member's office, and failing to check in with prison staff. The court discounted these infractions as "some hiccups at the beginning" and "a couple recent violations" that were not "particularly serious." In the court's view, it was enough that the "trend in the record" showed improvement. On the contrary, the slight improvement is a far cry from "substantial rehabilitation."