RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRANDON MCKINNIE,

*Defendant-Appellant*.

No. 21-3608

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:16-cr-00304-2—Christopher A. Boyko, District Judge.

Decided and Filed: January 26, 2022

Before: SILER, KETHLEDGE, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Christian J. Grostic, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge. Brandon McKinnie appeals the denial of his motion seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). He believes that he presented numerous extraordinary and compelling reasons to support the reduction, including the *Havis* error in his original sentencing, none of which were accepted by the district court. We agree with the district court that McKinnie's arguments lack merit and therefore affirm.

**BACKGROUND**

Brandon McKinnie is a recidivist drug dealer.  In 2011, a federal judge sentenced him to six months of imprisonment and three years of supervised release for conspiring to distribute crack cocaine.  Less than two years later, McKinnie was sentenced in Ohio state court for attempted drug trafficking.  And a few years after that, McKinnie returned to federal court to plead guilty to three other federal drug crimes, for which he was sentenced to 151 months' imprisonment.  In imposing that sentence, the district court, over McKinnie's objection, concluded that McKinnie was a career offender under U.S.S.G. § 4B1.1 because he had two prior convictions for controlled substance offenses:  the 2011 crack cocaine conspiracy and the attempted trafficking offense.  The career offender designation meant that McKinnie's Guidelines range increased from 60 to 71 months to 151 to 188 months.  We dismissed McKinnie's subsequent appeal because his plea agreement waived that right.

After McKinnie's sentence became final, our en banc Court decided *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam).  We held there that an attempt crime is not a predicate "controlled substance offense" within the meaning of § 4B1.1.  *Id.* at 387; *see* § 4B1.1 cmt. n.1.  Invoking *Havis*, McKinnie petitioned for relief under 28 U.S.C. § 2255, asserting that his sentence was unlawful because attempted trafficking and drug conspiracy could not serve as the basis for his career offender sentencing enhancement.  The district court, however, denied McKinnie's petition. Relying on our decision in *Bullard v. United States*, 937 F.3d 654 (6th Cir. 2019), the district court concluded that error in calculating the advisory Guidelines range, such as a *Havis* error, is not cognizable on collateral review, where relief is available only when a sentence violates the Constitution or a federal statute.  As a result, although McKinnie's career offender designation was seemingly a *Havis* error, the district court denied collateral relief.  McKinnie's subsequent appeal was dismissed for want of prosecution.

McKinnie separately moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), citing the *Havis* error, his obesity and hypertension, and the risk of contracting COVID-19 as "extraordinary and compelling reasons to reduce his sentence."  The district court denied the motion. We later vacated the district court's decision and remanded the matter so that the district

court could consider McKinnie's motion with the benefit of our recent decisions addressing § 3582(c)(1)(A).

On remand, the district court again denied McKinnie's motion, concluding that McKinnie failed to provide any extraordinary and compelling reasons to reduce his sentence. In the eyes of the district court, (1) *Havis* error was not, as a matter of law, an extraordinary and compelling reason under § 3582(c)(1)(A); (2) McKinnie's vaccination against COVID-19 mitigated his risk of infection; (3) his obesity and hypertension were insufficient to grant relief; and (4) his potential rehabilitation was not an extraordinary and compelling reason to reduce his sentence. McKinnie timely appealed.

## ANALYSIS

We review the denial of a motion seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for abuse of discretion. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009) (quoting *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005)).

Federal law authorizes a district court to reduce a defendant's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) a reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the § 3553(a) factors, to the extent applicable, support a reduction. *Ruffin*, 978 F.3d at 1003 (quoting § 3582(c)(1)(A)). Currently, no policy statement applies where a defendant (as opposed to the Bureau of Prisons) files a motion seeking a sentence reduction (sometimes known in our case law as "compassionate release"). *United States v. Sherwood*, 986 F.3d 951, 953 (6th Cir. 2021). A district court, therefore, must deny a defendant's motion if the defendant fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the § 3553(a) factors support a reduction. *Id.* at 954; *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021).

1.  We begin with McKinnie's claim that *Havis* error is an "extraordinary and compelling reason" to grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).  Recall that McKinnie's sentence was enhanced due to his prior attempted drug trafficking and drug conspiracy convictions.  Yet *Havis*, which issued later, held that attempted trafficking offenses do not trigger the career offender enhancement.  *See Havis*, 927 F.3d at 387; *see also United States v. Butler*, 812 F. App'x 311, 314 (6th Cir. 2020) (applying *Havis* to conclude that the Guidelines' definition of "controlled substance offense" does not include drug conspiracies).  McKinnie touts that development as an "extraordinary and compelling reason" justifying his release.

Guiding our review are the abundant decisions in our circuit addressing how new legal developments factor into our consideration of § 3582(c)(1)(A) motions.  Start with *United States v. Wills* and *United States v. Tomes*.  Both decisions rejected inmates' claims that the First Step Act's non-retroactive amendment to statutory mandatory minimums for certain controlled substance offenses were extraordinary and compelling reasons that justified a sentence reduction under § 3582(c)(1)(A)(i).  *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021) (order); *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021).  Not long thereafter, *United States v. Jarvis* reached the same conclusion as to the First Step Act's non-retroactive changes to 18 U.S.C. § 924(c)(1)'s mandatory minimum.  999 F.3d 442, 443, 445 (6th Cir. 2021).

More recently, we confronted the question posed by McKinnie's appeal—whether new judicial decisions concerning the Guidelines are "extraordinary and compelling" reasons to modify an inmate's sentence.  *See United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021).  *Hunter* concerned a prisoner who had been sentenced before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Guidelines are advisory, rather than mandatory.  *Hunter*, 12 F.4th at 560.  The district court found *Booker*'s non-retroactive change in sentencing law to be a factor supporting a finding of "extraordinary and compelling reasons" justifying release.  *Id.* at 563. We reversed.  *Id.*  Acknowledging our decisions in *Jarvis*, *Tomes*, and *Wills*, we explained that "[t]he fact that [a] case involves non-retroactive precedent, as opposed to statutes, is no reason to take a different approach" because "[w]e are required to follow statutes *and* binding precedent."  *Id.* at 564.  And in view of cases holding that *Booker*

does not apply retroactively to final convictions, we reasoned that "[j]ust as courts cannot use § 3582(c)(1)(A) as an 'end run around' Congress' retroactivity choices, courts cannot use that statute to circumvent binding precedent declaring the non-retroactive effect of new rules of criminal procedure." *Id.* at 565 (citation omitted). We thus instructed courts reviewing § 3582(c)(1)(A) motions to consider non-retroactive precedential developments only when weighing the § 3553(a) factors. *Id.* at 568–69.

That instruction applies in the *Havis* setting too. Federal sentencing law presumes that judicial decisions are not retroactive. *Hunter*, 12 F.4th at 563–64. We see no basis to upset that presumption here. *Cf. Alexander v. United States*, No. 19-4005, 2020 WL 6111201, at \*2 (6th Cir. June 30, 2020) ("[O]ur decision in *Havis* is not a new rule of constitutional law that the Supreme Court has made retroactive."). And McKinnie cites no authority to the contrary. Accordingly, because *Havis* does not apply retroactively, a *Havis* error is not an extraordinary and compelling reason to modify an inmate's sentence under § 3582(c)(1)(A)(i).

True, as McKinnie notes, unlike the express non-retroactivity language in the First Step Act, there is no similar statutory provision excluding non-retroactive judicial decisions from qualifying as "extraordinary and compelling reasons" to reduce an inmate's sentence. But that fact must be balanced against the understanding that the anti-retroactivity doctrine lies at the core of federal sentencing law. Indeed, the "ordinary practice" in federal sentencing law "is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). That is so because finality is "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). As Justice Harlan observed a half century ago, "[n]o one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved." *Mackey v. United States*, 401 U.S. 667, 691 (1971) (Harlan, J., concurring). Among other grounds supporting the need for finality are the "significant . . . resources" dedicated to prosecuting crimes, as well as the weighty interests that crime victims, the government, and the public share in a defendant serving the full term of his lawfully imposed sentence. *Cf. Edwards*

*v. Vannoy*, 141 S. Ct. 1547, 1554–55 (2021) (emphasizing that the finality of criminal convictions has paramount importance). For these and other reasons, in the collateral review setting, for example, the Supreme Court has "repeatedly stated" that judicial decisions announcing new rules of criminal procedure "ordinarily do not apply retroactively." *Id.* at 1555. And for our part, we have colorfully described the "finality of criminal judgments and the non-retroactivity doctrine" as "proverbial elephants in the criminal justice system." *Hunter*, 12 F.4th at 566.

Elephants are not easily displaced. As we said in *Hunter*, had Congress intended to override the anti-retroactivity doctrine in the First Step Act, it would have made "that intent specific." *Id.* at 565 (quoting *United States v. Noland*, 517 U.S. 535, 539 (1996)). Suffice it to say, the "vague and amorphous phrase" Congress chose—"extraordinary and compelling reasons"—does not license district courts "to treat non-retroactive precedent as a basis to alter a final judgment []and release a prisoner[]." *Id.* at 566.

2. Even if a *Havis* error itself is not an "extraordinary and compelling reason" justifying a sentencing reduction, McKinnie says he can cross that threshold by combining this *Havis* error with a number of other factors including his obesity and hypertension, risk of complications from COVID-19 infection, conditions of incarceration, and good behavior while in prison. At the outset, it bears noting that none of these grounds meets the "extraordinary and compelling" mark needed to justify a sentence reduction. Rehabilitation, for one, is not by itself extraordinary and compelling. *See* 28 U.S.C. § 994(t); *Hunter*, 12 F.4th at 572 ("Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" (citation omitted)). Nor, absent extenuating circumstances not present here, is the COVID-19 pandemic, with COVID-19 vaccinations now available to federal prisoners. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). (McKinnie, by the way, is fully vaccinated against COVID-19.) McKinnie's hypertension and obesity are not new developments; these facts were before the district court at the time of his sentencing. But facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction. *See id.* at 750. And as McKinnie has offered no evidence as to how these conditions have worsened since his sentencing, he fails to demonstrate

how they justify a sentence reduction. *See Hunter*, 12 F.4th at 569, 571 (explaining that a finding of extraordinary and compelling reasons "cannot be met based on a mere difference of opinion regarding the significance of the facts that existed at sentencing"). Finally, as mentioned, *Hunter* forecloses McKinnie's argument that a non-retroactive judicial decision is an extraordinary and compelling reason under § 3582(c)(1)(A)(i). *See id.* at 563–64.

Whatever shortcomings these factors may have on their own, McKinnie says their collective force justifies a sentence reduction. But why would combining unrelated factors, each individually insufficient to justify a sentence reduction, amount to more than the sum of their individual parts? That is surely not the case here. None of McKinnie's personal factors are either extraordinary or compelling. And we have previously explained that a non-retroactive judicial decision cannot support a finding of extraordinary and compelling circumstances whether "offered alone or combined with other personal factors." *Id.* at 568. For these reasons, the district court acted within its discretion by declining to find that these aggregate considerations necessitated a sentence modification. *See Lemons*, 15 F.4th at 749 (noting that a "combination of grounds for release, none of which independently supports a sentence reduction, does not collectively" permit a sentence reduction).

McKinnie contends that *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021), compels a different conclusion. *Owens* instructed the district court to consider whether an inmate's rehabilitation and "lengthy sentence"—when combined with the First Step Act's statutory changes to 18 U.S.C. § 924(c)—together amounted to an extraordinary and compelling reason justifying release. *Id.* at 764. But even assuming *Owens* is good law, *but see Jarvis*, 999 F.3d at 445–46 (concluding that *Owens* is not the law of the Circuit), McKinnie does not invoke new statutory language; he invokes a new judicial decision. And *Hunter*, in no uncertain terms, held that a non-retroactive judicial decision is not an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i). 12 F.4th at 566, 568. As the law of the Circuit, we must honor that decision. *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) ("[T]his circuit follows the rule that the holding of a published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court.").

That leads us to our recent decision in *United States v. McCall*. Writing against this settled precedential backdrop, *McCall* nonetheless suggested that *Hunter* need not be followed because it was decided after *Owens*. *See United States v. McCall*, 20 F.4th 1108, 1112–14 (6th Cir. 2021). That suggestion is difficult to accept when *Owens* did not address the question posed in *Hunter*: are non-retroactive judicial decisions "extraordinary and compelling reasons" to reduce an inmate's sentence under § 3582(c)(1)(A)? In other words, whether one accepts *Tomes* or *Owens,* there is no fair basis for not honoring *Hunter*, which ultimately resolved a question different from that raised in the prior cases. *McCall*, it is fair to say, disagreed with the holding in *Hunter*. But as *McCall* was decided after *Hunter*, the law of the Circuit doctrine required *McCall* to follow the prior precedent. *See Wright*, 939 F.3d at 700. *See generally United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) ("One panel of this court may not overrule the decision of another panel."). Adherence to that longstanding doctrine allows our Court to speak with one voice, whatever that voice may say in a particular context. Any other approach would leave district courts scrambling to assess a wave of conflicting appellate court decisions. And it would undermine any ability for parties to rely on a consistent application of the law, concerns that are at their apex in this criminal law setting, where substantial liberty interests are at stake. *See United States v. Cox*, 871 F.3d 479, 494 (6th Cir. 2017) (Sutton, J., concurring); *United States v. Diaz-Bastardo*, 929 F.2d 798, 799 (1st Cir. 1991) (Selya, J.).

Even on its own terms, *McCall*'s reasoning is flawed from top to bottom. One, *McCall*'s reading of *Owens* is inconsistent with *Tomes*, which predates *Owens*, as well as numerous other published decisions that have read *Tomes* in a fashion contrary to *Owens*. *See, e.g.*, *Jarvis*, 999 F.3d at 446 (explaining that a "faithful reading of *Tomes* . . . leads to just one conclusion: that it excluded non-retroactive First Step Act amendments from the category of extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors"); *Hunter*, 12 F.4th at 564 n.4. Two, *Owens* jettisoned *Tomes*'s statutory holding because of a purported factual difference, one that is demonstrably inaccurate. *Compare McCall*, 20 F.4th at 1113 ("*Tomes* did not discuss whether nonretroactive sentencing disparities could support a compassionate-release motion when combined with other factors."), *with Tomes*, 990 F.3d at 501, 504–05 (rejecting Tomes's argument that his asthma, risk of COVID-19 infection, and the First Step Act's non-retroactive changes in law constituted "extraordinary and

compelling" reasons for relief). And three, the meaning of the statutory term "extraordinary and compelling reasons" cannot change as facts ebb and flow from case to case. *See Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1512 (2019) ("[A] single use of a statutory phrase must have a fixed meaning . . . ."). All things considered, "[t]he grounds on which *Owens* purported to distinguish *Tomes* were implausible." *See McCall*, 20 F.4th at 1116 (Kethledge, J., dissenting).

\* \* \* \* \*

We affirm.