RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

MONTEZ HALL,

　　　　　　　　　　*Defendant-Appellee*.

No. 24-6094

─────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:10-cr-00163-28—Aleta Arthur Trauger, District Judge.

Argued: February 5, 2026

Decided and Filed: June 25, 2026

Before: BOGGS, NALBANDIAN, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Nicholas J. Goldin, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Molly Rose Green, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee. **ON BRIEF:** Nicholas J. Goldin, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Molly Rose Green, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee.

　　The court delivered a PER CURIAM opinion. NALBANDIAN, J. (pp. 12–19), delivered a separate concurring opinion.

─────────────

## OPINION

─────────────

　　PER CURIAM. Montez Hall was a Blood—a member of a violent gang. As a gang member, Hall helped his friends kill people. And eventually, he killed a woman himself.

He received a 30-year sentence for his crimes, but six years in, he applied for his freedom under the compassionate-release statute.  The district court granted his motion in part, finding that his "youth and ability for rehabilitation" constituted an "extraordinary and compelling" justification for reducing Hall's sentence, as provided in the compassionate-release statute.  Now the government appeals, arguing that "youth" and "rehabilitation" aren't "extraordinary and compelling" reasons under the statute.  The government is right, so we reverse the district court's order.

## I.

### A.

Montez Hall began his criminal career at 16 years old.  In 2006, he ran from the police while they executed a search warrant.  The police found Hall hiding in a bathtub, and they found cocaine base (crack) nearby.  He pled guilty in juvenile court to possession of crack, and he received a short term of probation.

That same year, Hall joined a gang called the Bloods.  The Bloods have a long history of murder and drug trafficking.  As the gang grew, it developed formal methods of preserving power by circulating weapons and cash to facilitate violence, robberies, and trafficking.  It also developed a heated rivalry with another gang called the Crips.

Two years after police arrested Hall with crack, they caught him firing shots near a home.  He pled guilty to unlawful possession of a revolver, and a judge sentenced him to six months' imprisonment.

After getting out of prison, he resumed his criminal activity with the Bloods.  And in July 2008, he and his friends were searching for rival gang members by driving around Nashville.  They spotted Alexandra Franklin dropping someone off at an apartment complex.  And while Alexandra didn't belong to any gang, she dated a Crip, and that was close enough.  So they followed her vehicle for half a mile until she reached a stop sign.  Hall and his friends fired about 20 shots into Alexandra's car.  Alexandra opened her car door and tried to run away, but she'd

been hit several times.  Hall and his crew shot her again, and she collapsed to the ground.  The shooters escaped.  Soon after, Alexandra died of her injuries.

Ten days later, an undercover police officer caught Hall participating in a drug deal as a lookout.  Hall pled guilty to facilitating the sale of a controlled substance, and a judge sentenced him to two years' imprisonment.  But the state let him out early.

Once he had his freedom, Hall again continued his criminal activity as a Bloods member.  As part of this crime spree, he helped his friends try to murder Franke'll Rogers.  And Jontrel Evans-Brown.  And Lawrence Wilkerson.  But Hall didn't stop there.  One night, he had an altercation with Bryan Hastye in a Nashville nightclub.  Bryan was a soldier stationed at Fort Campbell, and he left the nightclub after the altercation.  So Hall and his friends got in a car and followed Bryan.  Then they shot him, killing him in cold blood.  When police caught Hall and his friends, they found Hall's Beretta 9mm pistol in the vehicle's trunk.  Hall told police that his friend Kenneth Hatch had fired the shots, and the officers arrested the men.  Hall was 20 years old.

**B.**

In state court, a jury found Hall guilty of several violent crimes.  Hall received six years' imprisonment for facilitating the attempted murder of Franke'll Rogers, six years for facilitating the attempted murder of Jontrel Evans-Brown, six years for facilitating the attempted murder of Lawrence Wilkerson, two years for possessing a firearm as a felon, and twelve years for facilitating the murder of Bryan Hastye, all running concurrently.

Then Hall faced federal charges for his extensive gang activity.  The government also brought charges against dozens of his fellow Bloods, trying them as co-defendants.  In the end, most pled guilty, two were found guilty by a jury, and one evaded the police.

In federal court, Hall took a plea deal.  Although he initially faced six counts of various gang-related crimes, he pled guilty to only two.  In one, Hall pled guilty to several racketeering activities, which included drug trafficking, robbery, murder, bribery, and extortion.  And in the other, Hall pled guilty to conspiracy to use and carry a firearm during and in relation to a crime

of violence: killing Alexandra Franklin. In exchange, the government dismissed the other counts, which could have carried the death penalty. *See* 18 U.S.C. § 1959.

At sentencing, the parties debated whether the federal and state sentences should run consecutively or concurrently. The government wanted Hall to serve his state and federal sentences consecutively, and Hall wanted to serve them concurrently. In support of a lower sentence, Hall's attorney explained that Hall was "a young man at 22," and that he had completed "rehabilitative efforts."

The district court articulated its reasoning before announcing its decision. The court explained that the sentence accounted for "the relative culpability of the various defendants' actions," "other defendants charged with similar crimes," and "the history and characteristics of the defendant." R.2188, Sentencing Hr'g Tr., PageID 13455–56. And when the court explained Hall's characteristics, it mentioned Hall's family, stated that "Hall is very young," and said, "I think he can be rehabilitated." *Id.* at PageID 13457. In fact, the court said that Hall "seems to have really made a turnaround." *Id.* at PageID 13458. Then it imposed two consecutive sentences—240 months for the first count, and 120 months for the second count—running consecutively with his state sentence.

But Hall wanted to get out early. He served his state sentence first, then began his federal sentence in 2018. All the while, he litigated two § 2255 motions and two compassionate-release motions. In the first § 2255 motion, he claimed that his trial counsel was ineffective, and that the government violated his due-process rights by delaying his trial. In the second, he alleged that his murder of Alexandra Franklin wasn't a "crime of violence" after the Supreme Court's decision in *United States v. Davis*, 588 U.S. 445 (2019). And in his first compassionate-release motion, filed during the COVID-19 pandemic, he asked the court to release him from prison because of his health conditions—obesity and heart disease. Each time, Hall lost.

In 2024, Hall filed another motion for compassionate release, arguing that "extraordinary and compelling reasons" warranted his immediate release. R.2757, Mot. for Sentence Reduction, PageID 16090. These included his health issues, prison conditions, sentencing disparities, his youth at the time of the crime, and his post-offense rehabilitation.

The government countered, explaining that the court couldn't treat these reasons as "extraordinary and compelling" under Sixth Circuit precedent. Hall's motion went before the same district judge who had sentenced him in 2012.

The district court rejected Hall's request for immediate release, but it reduced his sentence by eight years. The court gave two reasons for its decision. First, it mentioned that Hall engaged in substantial rehabilitative efforts by becoming a suicide watch companion, studying for a degree in business administration, learning new skills, converting to Islam, and renouncing his gang. The court also considered letters that Bureau of Prison officials wrote in support of Hall's motion for a sentence reduction. Second, it emphasized that Hall "was 18 (almost 19) at the time" that he murdered Alexandra Franklin. R.2798, Order, PageID 16341. At the same time, the court was unconvinced about Hall's other "reasons" for compassionate release. It acknowledged that heart disease could "shorten his lifespan," but noted that his claims about the prison's insufficient medical care had "no substantiation whatsoever." *Id.* at PageID 16340. And the court said that although Hall received a different sentence than one co-defendant, he had a much higher criminal-history category. In all, the court took "into account all of these factors, pursuant to U.S.S.G. § 1B1.13(b)(5)," before deciding to reduce Hall's sentence by eight years. *Id.* at PageID 16341.

The government appealed.

## II.

We review the district court's decision for abuse of discretion. *United States v. Jackson*, 751 F.3d 707, 710 (6th Cir. 2014). We ask whether the district court "relie[d] on clearly erroneous findings of fact, use[d] an erroneous legal standard, or improperly applie[d] the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007)). So if the district court granted Hall's motion "based on a purely legal mistake such as a misreading of the extraordinary-and-compelling-reasons requirement," it abused its discretion. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) (citation modified).

To reduce Hall's sentence, the court granted his motion under 18 U.S.C. § 3582(c)(1)(A)(i), the "compassionate-release" statute. Until 2018, the statute required the Director of the Federal Bureau of Prisons to file a compassionate-release motion on behalf of the prisoner. *United States v. McCall*, 56 F.4th 1048, 1053–54 (6th Cir. 2022) (en banc). But the First Step Act changed that. *See id.*; Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239. Now, a prisoner who has exhausted his administrative remedies can file the motion on his own. *See McCall*, 56 F.4th at 1053–54. Under the statute, district courts can "reduce [a prisoner's] term of imprisonment" when the prisoner makes three showings: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with [the Sentencing Commission's] applicable policy statements"; and (3) "the factors set forth in § 3553(a)" support the reduction. 18 U.S.C. § 3582(c)(1)(A); *United States v. Williams*, 161 F.4th 951, 953 (6th Cir. 2025).

Congress didn't define "extraordinary and compelling," instead leaving it to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" through policy statements. 28 U.S.C. § 994(t). But Congress put a key limit on the Commission's power to interpret the statute. It provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In the immediate aftermath of the First Step Act, however, the Commission didn't adopt any guidance on the meaning of "extraordinary and compelling."[1] So we interpreted the statute on our own. And in doing so, we issued a decision that's relevant here.

In *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021), we reviewed a district court's grant of compassionate release. There, the trial court found that a "combination of" Hunter's youth at the time of the offense, his post-offense rehabilitation, sentencing disparities, and a change in the law created "extraordinary and compelling circumstances" for his release.

---

[1]Starting in 2006, the Commission adopted policy-statement guidance on what constituted extraordinary and compelling reasons for compassionate release. But those policy statements addressed Board-initiated requests for compassionate release, not inmate-initiated requests, which didn't exist until the First Step Act in 2018. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

*See* R.978, Tr. of Mot. for Compassionate Release, 8–17, *United States v. Hunter*, No. 2:92-cr-81058-21 (Mar. 5, 2021).  But we rejected that reasoning.

To determine whether that district court had abused its discretion, we followed a simple process.  First, we identified four factors from the district court's analysis.  The district court hadn't clarified whether any of its considerations blended together, so we identified "youth," "rehabilitation," "sentencing disparities," and a "change in the law" as the factors it considered. *See Hunter*, 12 F.4th at 560.  Then we analyzed each factor individually, determining whether the compassionate-release statute allowed the district court to consider it. *Id.* at 563.

We rejected each factor.  Importantly, we held that district courts can't consider "youth" or "sentencing disparities" because "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Id.* at 570.  And district courts can't consider a "change in the law" because of the non-retroactivity doctrine. *Id.* at 563; *see McCall*, 56 F.4th at 1066.  That left only rehabilitation, which failed because "Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *Hunter*, 12 F.4th at 572 (quoting 28 U.S.C. § 994(t)).  So even though Hunter was young when he committed his crime, and even though he'd been rehabilitated, the district court impermissibly bent those facts into an "extraordinary and compelling" reason.  We thus found that the district court abused its discretion when it granted Hunter's motion for compassionate release. *Id.* at 569.

Following *Hunter*, in 2023, the Sentencing Commission promulgated an applicable policy statement on "extraordinary and compelling." U.S.S.G. § 1B1.13(b).  The Commission explained that "extraordinary and compelling" reasons existed in six circumstances, "or a combination thereof." *Id.*  First, "Medical Circumstances," such as a terminal illness or a serious condition that a prison can't treat. *Id.* § 1B1.13(b)(1).  Second, "Age," meaning a prisoner who is at least 65 years old, is in deteriorating health, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* § 1B1.13(b)(2).  Third, "Family Circumstances," which applies to prisoners who are the primary caregiver for an incapacitated relative. *Id.* § 1B1.13(b)(3).  Fourth, "Victim of Abuse," meaning a prisoner who was abused by prison workers. *Id.* § 1B1.13(b)(4).

For its fifth "circumstance," the Commission added a catch-all. It explained that a prisoner could show an "extraordinary and compelling" reason by presenting "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [first four circumstances], are similar in gravity to [the first four circumstances]." *Id.* § 1B1.13(b)(5) (citation modified). Sixth, the Commission added "Unusually Long Sentence," which applies to prisoners who have "served at least 10 years" of a sentence that a new change in the law would've shortened. *Id.* § 1B1.13(b)(6).

The Commission also added a few caveats to its policy statement. It noted that although rehabilitation, by itself, can't be an "extraordinary and compelling" reason, rehabilitation "while serving the sentence may be considered in combination with other circumstances." *Id.* § 1B1.13(d). Moreover, in seeming opposition to *Hunter*'s holding that "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence," *Hunter*, 12 F.4th at 570, the Commission announced that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction," U.S.S.G. § 1B1.13(e).

Finally, after the Commission released its policy statement, we decided *United States v. Bricker*, 135 F.4th 427 (6th Cir. 2025). That case presented the same general question we face here: What happens when the new policy statement conflicts with our earlier determination of what constitutes an "extraordinary and compelling" reason? *See id.* at 435.

In *Bricker*, the policy statement conflicted with our holding in *McCall*. *See id.* at 434. The conflict arose when three prisoners moved for compassionate release, citing new sentencing laws that lowered the sentences that they would have received. *Id.* at 431–32. They pointed to § 1B1.13(b)(6) of the policy statement, which provided that "a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason." U.S.S.G. § 1B1.13. But in *McCall*, we'd held that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop." *McCall*, 56 F.4th at 1066. This forced us to choose between two readings of the compassionate-release statute—*McCall*'s or § 1B1.13(b)(6)'s. We chose *McCall*'s reading, holding that the Commission "cannot overrule [*McCall*] by issuing a 'policy statement' that re-interprets" the

compassionate-release statute. *Bricker*, 135 F.4th at 435. Put differently, when our pre-2023 interpretation of the compassionate-release statute conflicts with § 1B1.13(b), our interpretation wins.

The Supreme Court recently endorsed this view. *See Rutherford v. United States*, 146 S. Ct. 1320 (2026). In *Rutherford*, the Court agreed that a nonretroactive change in § 924(c)'s penalties couldn't be an "extraordinary and compelling" reason for compassionate release. *Id.* at 1330. The Court first considered the plain meaning of "extraordinary and compelling," which, in its view, did not encompass nonretroactive changes in penalties. *Id.* at 1330–31. And, consistent with our reasoning in *Bricker*, the Court concluded that the Commission's policy statement permitting the consideration of such changes couldn't trump the statute's plain language—as interpreted by the courts. *Id.* at 1334. The Court held that "the Commission's policy statements must be consistent with the governing statute, and courts have a duty to independently interpret the statute." *Id.* (citation modified).

Now the government makes two freestanding arguments for reversal. First, it points to *Bricker*, arguing that *Hunter* controls over the new policy statement. And second, it points to the 2023 policy statement itself, arguing that the policy statement doesn't count Hall's youth and rehabilitation as an "extraordinary and compelling" reason to reduce his sentence.

**A.**

We agree with the government that *Hunter* still controls. As in *Hunter*, here, the "district court did not explain how [its] factors interacted, or how the combination of the factors compounded the reasons for [the defendant]'s release." *Hunter*, 12 F.4th at 563 n.3; *see* R.2798, PageID 16341. So we "will not perform that exercise." *Hunter*, 12 F.4th at 563 n.3. But it's clear that the district court relied on (1) Hall's youth at the time of the offense and (2) Hall's post-offense rehabilitation. It "t[ook] into account all of these factors, pursuant to U.S.S.G. § 1B1.13(b)(5) . . . find[ing] that the defendant has established extraordinary and compelling reasons for a sentence reduction." R.2798, PageID 16341.

Just as we rejected "youth" and "rehabilitation" in *Hunter*, we reject the same factors here. *See Hunter*, 12 F.4th at 569. And to the extent that § 1B1.13(b)(5) would permit the

district court's analysis—in contravention of *Hunter*—*Bricker* tells us that *Hunter*'s interpretation of the compassionate-release statute prevails. *See Bricker*, 135 F.4th at 435. The Supreme Court reinforced this view in *Rutherford* by explaining that courts "are not bound to follow the Commission's guidance when it 'exceed[s its] statutory authority' by adopting a definition of a term that is inconsistent with the statute." *Rutherford*, 146 S. Ct. at 1334 (quoting *Batterton v. Francis*, 432 U.S. 416, 426 (1977)). So because we've interpreted the statute to foreclose "youth" and "rehabilitation" as permissible justifications for release, no policy statement can disturb that decision.

Hall tries to relitigate *Bricker*, *Hunter*, and *Rutherford*. He says that "*Hunter* and § 1B1.13(b)(5) are in conflict," but he contends that the policy statement carries the day.[2] Appellee Br. at 23, 38–39. This either misunderstands *Bricker*, or it misunderstands the role of a Sixth Circuit panel. In *Bricker*, we held that our precedent trumps any policy statement. And we can't overrule *Bricker* or *Hunter* because "[a] panel of this Court cannot overrule the decision of another panel." *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Because *Hunter* trumps § 1B1.13(b)(5), courts in this Circuit are bound by its holding, even if they disagree with its reasoning. For those same reasons, when *Hunter* clashes with § 1B1.13(e), we follow *Hunter*. In short, the Commission's policy statement "must land within the statutory goalposts," as defined by our precedent. *Rutherford*, 146 S. Ct. at 1334.

The district court abused its discretion when it granted Hall's motion for compassionate release. In *Hunter*, we found an abuse of discretion in a comparable circumstance, even though we hadn't yet issued an authoritative opinion on whether youth and rehabilitation could qualify as "extraordinary and compelling." 12 F.4th at 559. Here, the district court went a step further. It ignored *Hunter*, as prohibited by *Bricker*. So it "improperly applie[d] the law" by interpreting Hall's youth and rehabilitation to be "extraordinary and compelling" under the statute. *Flowers*, 963 F.3d at 497.

---

[2]For now, we accept that *Hunter*'s analysis conflicts with § 1B1.13(b)(5).

**III.**

The district court's decision conflicts with our precedent. This amounts to an abuse of discretion. So we REVERSE the district court's order.

———————————————

**CONCURRENCE**

———————————————

NALBANDIAN, Circuit Judge, concurring.  The government also makes an alternative argument.  It says that, putting *Hunter* and *Bricker* aside, under the Sentencing Commission's recent policy statement—correctly construed—"youth" and "rehabilitation" can't qualify as "extraordinary and compelling."  The government is correct.

Again, the Commission's policy statement allows district courts to find "extraordinary and compelling" reasons in six circumstances.  *See* U.S.S.G. § 1B1.13(b).  But Hall didn't meet the criteria for any of the five standard "circumstances," so the district court relied on the catch-all:  § 1B1.13(b)(5).  Under the catch-all, a prisoner can qualify in two ways.  If the prisoner meets one of the first four "circumstances," he can bundle that circumstance with another circumstance he faces.  *See id.*  But if he doesn't qualify for any of the first four "circumstances," he must demonstrate individual circumstances that, "when considered by themselves . . . are similar in gravity to [the first four circumstances]."  *Id.*  Hall falls into the second camp—he doesn't meet any of the first four circumstances.  So when the district court granted his compassionate-release motion, it made an implicit finding that Hall presents at least one circumstance that is "similar in gravity to" the circumstances of "Medical Condition," "Age," "Family Circumstances," and "Victim of Abuse."

The district court didn't articulate its formula.  Instead, it mentioned rehabilitation and youth together, saying that Hall "was 18 (almost 19) at the time of the offenses . . . [which] remains uppermost in the court's mind, given the remarkable change the defendant has undergone over the years."  R.2798, Order, PageID 16341.  So we can pull "youth" and "rehabilitation" from this analysis to determine whether the district court could consider either factor.  *See United States v. McCall*, 56 F.4th 1048, 1066 (6th Cir. 2022) (en banc).  Then we can decide whether the district court "improperly applie[d] the law" by reducing Hall's sentence. *See United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020).

## I.

The district court emphasized Hall's youth, writing that his youth at the time of the offense "remain[ed] uppermost in the court's mind." R.2798, PageID 16341. I begin by comparing this consideration to the Commission's policy statement.

To start, the policy statement requires that a circumstance be "similar in gravity" to the first four circumstances listed. U.S.S.G. § 1B1.13(b)(5). And youth isn't "similar in gravity" to any of them.

"Gravity" means "importance," "significance," or "seriousness." *See* Gravity, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). So although Hall didn't need to show that his youth was "similar in nature and consequence" to the first four circumstances, *see* U.S. Sent'g Guidelines Manual app. C at 207 (U.S. Sent'g Comm'n 2024), he did need to show that his youth was similar in importance, significance, or seriousness.

The first four circumstances each present serious danger, either to the prisoner or to someone else. When a prisoner faces any of these circumstances, his continued incarceration will jeopardize someone's health or safety. The Commission limited the first circumstance to prisoners who demonstrate a severe need for medical care outside of a prison. *See* U.S.S.G. § 1B1.13(b)(1). And it limited the second circumstance to elderly prisoners who are "experiencing a serious deterioration in physical or mental health because of the aging process." *See id.* § 1B1.13(b)(2). Third, prisoners whose imprisonment seriously endangers another person—a dependent—can qualify for release. *See id.* § 1B1.13(b)(3). And fourth, a prisoner who has been severely abused by custodial staff can qualify. *See id.* § 1B1.13(b)(4). The fourth provision also lowers a prisoner's evidentiary requirement if he shows that he faces "imminent danger." *See id.*

A prisoner's youth might evoke additional sympathy, but it doesn't come close to the "gravity" of danger. Many prisoners serve long sentences for crimes they committed at young ages, and they don't face any more danger than other prisoners. And regret, no matter how strong, doesn't come close to the "importance," "significance," or "seriousness" of injury or death. If we considered youth "similar in gravity" to the other circumstances, the provision's

catch-all would swallow the provision itself.  District courts could release prisoners for any number of sympathetic reasons—growing up in poverty, converting to a new religion, or having children.  The term "extraordinary and compelling" must have some limiting principle.  Here, the Commission provided one.

The canon of *ejusdem generis* also provides some insight.  *See United States v. Brown*, 536 F.2d 117, 121 (6th Cir. 1976) ("Literally, ejusdem generis means of the same kind, class, or nature.").  When courts interpret a catch-all term, this canon prompts them to find similarities among terms that precede the catch-all.  *See McBoyle v. United States*, 283 U.S. 25, 26–27 (1931) (holding that "automobile, automobile truck, automobile wagon, motor cycle, or any other self-propelled vehicle not designed for running on rails" didn't apply to an airplane).  If the first four items in a list share a common characteristic, the catch-all probably shares that characteristic too.  *See id.*

The policy statement provides four circumstances, followed by a catch-all.  *See* § 1B1.13(b).  The first four circumstances allow district courts to reduce a prisoner's sentence only when his incarceration could produce death or serious injury.  That situation is extraordinarily "important," "significant," and "serious."  It makes sense that the catch-all, which prohibits release unless a prisoner presents a circumstance "similar in gravity" to the first four, would share that characteristic.  So "gravity" doesn't mean "subjective weightiness."  It refers to real, tangible danger.

The first four circumstances also share another characteristic:  "[T]hey generally refer to circumstances that develop after sentencing."  *United States v. Bryant*, 144 F.4th 1119, 1126 (9th Cir. 2025) (emphasis omitted).  And that makes sense, given the scope of the underlying statute.  Section 3582(c)(1)(A) gives prisoners recourse when district courts don't "anticipate developments that take place *after* the first sentencing."  *Setser v. United States*, 566 U.S. 231, 243 (2012) (emphasis added) (citation modified).  If that's true, youth can't qualify.

That said, the Commission's policy statement doesn't categorically limit consideration to things that develop after sentencing.  In § 1B1.13(e), the Commission wrote, "the fact that an extraordinary and compelling reason reasonably *could have been known or anticipated* by the

sentencing court does not preclude consideration for a reduction under this policy statement." U.S.S.G. § 1B1.13(e) (emphasis added).

But here, Hall's youth wasn't just something that the sentencing court could have "known or anticipated" at sentencing. It was a factor that the court explicitly considered. So Hall's sentence already accounted for his youth at the time of the offense. And the sentence didn't include any implicit consideration that Hall's youth could merit a future sentence reduction if he showed rehabilitation, since "sentencing courts cannot consider the potential for a future sentence reduction in imposing [a] sentence." *United States v. Recla*, 560 F.3d 539, 545 (6th Cir. 2009). That comports with principles of finality. *See McCall*, 56 F.4th at 1055.

Even without comparing Hall's circumstances to the first four, his argument bends the policy statement's text in two more ways.

First, the Sentencing Commission didn't provide any textual indication that youth could be "extraordinary." In fact, it suggested the opposite. The Commission included a category titled "Age of the Defendant," but it excluded "youth." *See* U.S.S.G. § 1B1.13(b)(2). That omission means something. *See* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 107–11 (2012) (explaining the interpretive canon of *expressio unius*). Here, the Commission used a broad term: "Age." But then it explained exactly when "Age" counts. A prisoner only demonstrates extraordinary circumstances when he "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his . . . term of imprisonment." U.S.S.G. § 1B1.13(b)(2). The Commission deliberately excluded "youth" from that category, leaving a hint that youth doesn't count.

And second, Hall's reading doesn't fit the plain meaning of "extraordinary and compelling." *See Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026). When Congress passed this statute in 1984, "most understood 'extraordinary' to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *McCall*, 56 F.4th at 1055; *see Rutherford*, 146 S. Ct. at 1330. Hall was almost 19 years old when he killed Alexandra Franklin. And when he was 20, he had a deadly altercation with Bryan Hastye. In 2009—the year

Hall was arrested—people under 20 years old committed 131 homicides in the state of Tennessee. *See* FBI Crime Data Explorer: Expanded Homicide Data, Tenn. (2009), https://cde.ucr.cjis.gov/ [https://perma.cc/G9EL-KFHH]. That's about 2.5 homicides per week, or about how often it rains in Nashville. *See* Nashville Weather By Month, Weather Spark, https://weatherspark.com/y/14687/Average-Weather-in-Nashville-Tennessee-United-States-Year-Round [https://perma.cc/H533-FQZW]. That doesn't seem "most unusual," "far from common," or "having little or no precedent."

The only other circuit to address this question came to the same conclusion. *See Bryant*, 144 F.4th at 1126. In *Bryant*, the Ninth Circuit reviewed a district court's finding that youth can be an "extraordinary and compelling" reason for compassionate release. *Id.* As a sister circuit, the *Bryant* court wasn't bound by *Hunter* or *Bricker*. But it still rejected the district court's reasoning. The *Bryant* court explained that "a defendant's youth at the time of his offense" isn't "similar in gravity to the other circumstances in § 1B1.13." *Id.* (citation modified). So "interpreting 'extraordinary and compelling' to include a defendant's youth would turn compassionate release into a loophole for reevaluating sentencing decisions without congressional authorization." *Id.* at 1127.

## II.

But Hall says the Commission contemplated that youth could be "extraordinary and compelling," relying on the Commission's commentary notes. He highlights pages 208–09, which justify and explain the Commission's decision to add subsection (c) to the policy statement. The notes say:

> Whereas subsection (b)(6) narrowly limits the circumstances in which a non-retroactive change in the law can constitute an extraordinary and compelling reason that itself can warrant a reduction in sentence, subsection (c) of the amended policy statement governs the use of changes in the law in cases where a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction. In those circumstances, all changes in law, including non-retroactive amendments to the Guidelines Manual, may properly be considered in determining the extent of a sentencing reduction. For example, a defendant's motion may present the following circumstances: (a) commendable rehabilitation while incarcerated; (b) *the offense conduct occurred when the defendant was in his late teens or early twenties*; and (c) pursuant to intervening

legislation or intervening Guidelines amendments, the sentence likely to be imposed at the time of the motion would be lower than the sentence being served, but not grossly so.

U.S. Sent'g Guidelines Manual app. C at 209 (emphasis added).  Hall clips the last sentence of this paragraph, leaving off the first two.  He says it proves that a "proper construction of § 1B1.13(b)(5) is . . . one where a district court can consider the fact that an individual was in his late teens or early twenties."  Appellee Br. at 19 (citation modified).

This argument has a few problems.  To start, it's unclear that the commentary notes apply as cleanly as Hall claims.  The excerpt comes from an example within an explanation of a neighboring provision—(c), not (b)(5).  That's a few degrees removed from an authoritative interpretation of (b)(5).

But also, if this paragraph of commentary operates the way that Hall suggests, the provision becomes too strong to receive deference.  It would effectively add another circumstance to §1B1.13(b).  We've held that "guidelines commentary may only interpret, not add to, the guidelines themselves."  *United States v. Riccardi*, 989 F.3d 476, 479–80 (6th Cir. 2021) (citing *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam)).  In *Riccardi*, we declined to defer to commentary that mandated a minimum loss amount of $500 for stolen gift cards.  This amounted to a "substantive policy choice," regardless of whether we used *Stinson* or *Kisor* deference.  *Id.* at 487; *see id.* at 493 (Nalbandian, J., concurring).  So we reasoned that "if the Commission seeks to keep individuals behind bars for longer periods of time based on this type of 'fictional' loss amount, this substantive policy decision belongs in the guidelines, not in the commentary."  *Id.*

The same reasoning applies here.  The current policy statement doesn't fit Hall's reading.  As discussed above, "youth and rehabilitation" don't match any "extraordinary and compelling" circumstances that the Commission enumerated.  Hall's reading would ignore this inconsistency by shoving "youth and rehabilitation" into the catch-all.  That's not "interpretation," it's addition.  It's also a major policy decision.  And if the Commission wants to release prisoners based on

"youth and rehabilitation," that policy decision belongs in the Guidelines.**[3]** *See Riccardi*, 989 F.3d at 479. So the Commission can't make such an impactful change by just tweaking its legislative history.

In *Havis*, we held that the Commission improperly used commentary when it expanded the meaning of "controlled substance offense" to include attempt crimes, since the underlying Guideline said nothing about attempt crimes. *See Havis*, 927 F.3d at 387. So the Commission responded by explicitly incorporating attempt crimes into the Guidelines. *See United States v. Dorsey*, 91 F.4th 453, 459 (6th Cir. 2024). The Commission took a different approach after *Hunter*, which held that district courts can't consider youth. *See United States v. Hunter*, 12 F.4th 555, 563. The Commission added § 1B1.13(e), which contradicted *Hunter*'s prohibition on considering factors that were known at sentencing, but it stayed silent on whether "youth" or "youth and rehabilitation" could qualify as "extraordinary and compelling." *See* § 1B1.13. As it stands, "youth and rehabilitation" aren't in the policy statement. And "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018).

**III.**

If "youth" fails, "rehabilitation" does too. We've said that "combining unrelated factors, each individually insufficient to justify a sentence reduction," doesn't "amount to more than the sum of their individual parts." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). In other words, zero plus zero equals zero. And in this equation, we treat rehabilitation as an individual factor that can only be added to a separate, legitimate factor. *See McCall*, 56 F.4th at 1066.

When a district court considers "rehabilitation" alone, the underlying statute provides clear guidance. Congress explicitly provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). So although the Commission added that rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of

---

**[3]**Again, the policy decision would have no effect in our Circuit. *See United States v. Bricker*, 135 F.4th 427, 435 (6th Cir. 2025); *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021). But this section's analysis assumes that *Hunter* and *Bricker* are out of the picture.

imprisonment is warranted," courts can't rely exclusively on rehabilitation. *See id.*; U.S.S.G. § 1B1.13(d).

In sum, district courts cannot consider "youth," "rehabilitation," or "youth and rehabilitation" as extraordinary and compelling circumstances that warrant compassionate release.

**IV.**

This also amounts to an abuse of discretion. We've held that a district court abuses its discretion when it issues a compassionate-release order based on a "misreading of the extraordinary-and-compelling-reasons requirement." *See United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). That's what happened here. The district court misread § 1B1.13(b)(5) to include youth and rehabilitation as "extraordinary and compelling," making a "purely legal mistake." And without that mistake, Hall's motion would've failed. So the district court abused its discretion by wholly relying on a mistaken interpretation of the law.